# 23-15320

# United States Court of Appeals
### *for the*
# Ninth Circuit

LISA LEAKE, KRISTEN GRACE, JOSEPH HEYSER, CHRISTOPHER STEIN, and LESLIE ZEPEDA,

*Plaintiffs-Appellants,*

v.

RAYTHEON TECHNOLOGIES CORPORATION,

*Defendant-Appellee.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA
CASE NO. 4:22-cv-00436-RM

## BRIEF OF DEFENDANT-APPELLEE

Respectfully submitted by:

SEYFARTH SHAW LLP
Esteban Shardonofsky
sshardonofsky@seyfarth.com
700 Milam Street, Suite 1400
Houston, Texas 77002-2797
Telephone: (713) 225-2300
Facsimile: (713) 225-2340

Dawn R. Solowey
dsolowey@seyfarth.com
Seaport East, Suite 1200
Two Seaport Lane
Boston, MA 02210
Telephone: (617) 946-4800
Facsimile: (617) 946-4801

Owen R. Wolfe
owolfe@seyfarth.com
620 Eighth Avenue
New York, NY 10018
Telephone: (212) 218-5500
Facsimile: (212) 218-5526

*Attorneys for Defendant-Appellee*

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure:

Raytheon Company,[1] by and through its undersigned counsel, hereby states that Defendant-Appellee Raytheon Technologies Corporation has no parent company, and no publicly-held entity directly or indirectly owns 10% or more of its stock. Raytheon Technologies Corporation is Raytheon Company's parent corporation.

---

[1] Raytheon Technologies Corporation was erroneously named by Appellants in the District Court as the Defendant in this matter; Appellants were actually employed by Raytheon Company.

## TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT .................................................... i

TABLE OF AUTHORITIES ...................................................................v

PRELIMINARY STATEMENT ............................................................1

JURISDICTIONAL STATEMENT ........................................................4

STATEMENT OF THE ISSUES...........................................................5

STATEMENT OF THE CASE.............................................................5

I.      RAYTHEON'S NEUTRAL COVID-19 VACCINATION POLICY
        AND PLAINTIFFS' OBJECTIONS .........................................6

II.     EACH OF THE PLAINTIFFS RECEIVES AN EXEMPTION FROM
        THE POLICY ...................................................................8

III.    DESPITE CONCEDING THAT THEY DID NOT SUFFER
        ADVERSE EMPLOYMENT ACTION DUE TO THEIR
        RELIGIOUS BELIEFS, PLAINTIFFS FILE SUIT.................................12

IV.     THE DISTRICT COURT DISMISSES THE COMPLAINT WITH
        PREJUDICE ...................................................................13

SUMMARY OF THE ARGUMENT ...................................................15

STANDARD OF REVIEW ...........................................................17

ARGUMENT ...................................................................18

I.      PLAINTIFFS' NEW "FACTUAL" ARGUMENTS ARE WRONG
        AND IRRELEVANT...............................................................18

II.     THE DISTRICT COURT PROPERLY DISMISSED PLAINTIFFS'
        TITLE VII DISPARATE TREATMENT CLAIM ...................................22

        A.      Plaintiffs Failed to Allege Protected Status or That They Were
                Treated Differently Than Similarly Situated Employees................24

        B.      Plaintiffs' Arguments Regarding Disparate Treatment Fail and
                Do Not Address the Deficiencies in Their Complaint ...................32

III.   THE DISTRICT COURT PROPERLY DISMISSED PLAINTIFFS'
       TITLE VII HOSTILE WORK ENVIRONMENT CLAIM .....................39

       A.    Plaintiffs Failed to Allege Any "Hostile" Conduct, Let Alone
             the "Extreme" Conduct Required for a Hostile Work
             Environment Claim ........................................................................41

       B.    Plaintiffs' Arguments Regarding Hostile Work Environment
             Ignore the Complaint and the District Court's Decision.................43

IV.    THE DISTRICT COURT PROPERLY DISMISSED PLAINTIFFS'
       TITLE VII RETALIATION CLAIM ........................................................45

       A.    Plaintiffs Could Not Plead The Causal Link Required For a
             Retaliation Claim..........................................................................47

       B.    Plaintiffs' Arguments Regarding Retaliation Do Not Address
             the Lack of Causal Connection ......................................................48

V.     THE DISTRICT COURT PROPERLY DISMISSED THE
       COMPLAINT WITH PREJUDICE ........................................................48

VI.    PLAINTIFFS' NEW ARGUMENTS REGARDING DUE PROCESS
       AND EQUAL PROTECTION ARE IMPROPER AND
       IRRELEVANT ........................................................................................50

       A.    Plaintiffs Never Raised Constitutional Arguments Below ............50

       B.    Plaintiffs Never Asserted Any Constitutional Causes of Action ....50

       C.    Plaintiffs Could Not Have Asserted Constitutional Claims
             Against Raytheon Because it is a Private Actor.............................51

             1.    Constitutional Claims Can Only Be Asserted Against
                   State Actors ..........................................................................51

             2.    Raytheon Was Not Exercising Traditional Government
                   Powers ..................................................................................54

             3.    Raytheon's Employment Decisions Were Not State
                   Actions ..................................................................................55

CONCLUSION ....................................................................................................57

iii

STATEMENT REGARDING ORAL ARGUMENT ..........................................57

CERTIFICATE OF COMPLIANCE...................................................................59

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Alexander v. Saul*,
817 F. App'x 401 (9th Cir. 2020) ..............................................18, 36, 38, 50, 53

*Anderson v. United Airlines, Inc.*,
577 F. Supp. 3d 1324 (M.D. Fla. 2021) ............................................................25

*Ansonia Bd. of Educ. v. Philbrook*,
479 U.S. 60 (1986) ............................................................................................25

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..........................................................................................17

*Aukamp-Corcoran v. Lancaster Gen. Hosp.*,
2022 U.S. Dist. LEXIS 29355 (E.D. Pa. Feb. 17, 2022) ..................................25

*Barrington v. United Airlines*,
566 F. Supp. 3d 1102 (D. Colo. 2021) ..............................................................25

*Bastidas v. Good Samaritan Hosp. LP*,
774 F. App'x 361 (9th Cir. 2019) ......................................................................34

*Beckerich v. St. Elizabeth Med. Ctr.*,
563 F. Supp. 3d 633 (E.D. Ky. 2021) ...............................................................29

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ..........................................................................................17

*Benton-Flores v. Santa Barbara Unified School District*,
2020 U.S. Dist. LEXIS 257960 (C.D. Cal. Sept. 21, 2020) ........................41, 43

*Bolden-Hardge v. Off. of the Cal. State Controller*,
63 F.4th 1215 (9th Cir. 2023) ...........................................................................26

*Buchanan v. Genetech, Inc.*,
2010 U.S. Dist. LEXIS 90061 (N.D. Cal. Aug. 31, 2010) ................................47

*Burcham v. City of L.A.*,
562 F. Supp. 3d 694 (C.D. Cal. 2022) ..............................................................29

*Burson v. Freeman*,
  504 U.S. 191 (1992)......................................................................53

*Calvary Chapel Dayton Valley v. Sisolak*,
  140 S. Ct. 2603 (2020)..................................................................52

*Cornish v. Corr. Servs. Corp.*,
  402 F.3d 545 (5th Cir. 2005) ....................................................55, 56

*Creger v. United Launch Alliance LLC*,
  571 F. Supp. 3d 1256 (N.D. Ala. 2021)............................................25

*Cruzan v. Director, Missouri Department of Health*,
  497 U.S. 261 (1990)......................................................................52

*Dema v. Allegiant Air, LLC*,
  2014 U.S. Dist. LEXIS 95318 (D. Az. July 11, 2014) ......................23

*DeMuria v. Hawkes*,
  328 F.3d 704 (2d Cir. 2003) ..........................................................53

*E.E.O.C. v. Firestone Fibers & Textiles Co.*,
  515 F.3d 307 (4th Cir. 2008) ..........................................................25

*Egelkrout v. Aspirus, Inc.*,
  2022 U.S. Dist. LEXIS 128519 (W.D. Wisc. July 20, 2022)......................27, 28

*Farragher v. City of Boca Raton*,
  524 U.S. 775 (1998)......................................................................40

*Forsberg v. Pacific Northwest Telephone Co.*,
  840 F.2d 1409 (9th Cir. 1988) ..................................................23, 29

*Freeman v. Raytheon Techs. Corp.*,
  2023 U.S. Dist. LEXIS 73223 (D. Colo. Mar. 24, 2023),
  *appeal filed*, Case No. 23-1133 (10th Cir. Apr. 25, 2023) ................54

*Friend v. AstraZeneca*,
  2023 U.S. Dist. LEXIS 83749 (D. Md. May 11, 2023).........................26, 28, 38

*Halgren v. City of Naperville*,
  577 F. Supp. 3d 700 (N.D. Ill. Dec. 19, 2021) ..................................53

*Hernandez v. Cty. Maricopa*,
   792 F. App'x 551 (9th Cir. 2020) ....................................37

*Hill v. Borough of Kutztown*,
   455 F.3d 225 (3d Cir. 2006) .................................53

*Ingraham v. Wright*,
   430 U.S. 651 (1977)...........................................52

*Isaacs v. USC Keck Sch. of Med.*,
   853 F. App'x 114 (9th Cir. 2021) .............................51, 54

*Jacobson v. Massachusetts*,
   197 U.S. 11 (1905)..................................50, 52, 56

*Jones v. Rooms to Go*,
   2020 U.S. Dist. LEXIS 117695 (S.D. Tex. July 6, 2020) ..................................38

*Jordan v. Verizon New England, Inc.*,
   180 F. App'x 183 (1st Cir. 2006) ....................................52

*Keene v. City*,
   2023 U.S. App. LEXIS 11807 (9th Cir. Apr. 18, 2013)........................31, 32, 39

*Klassen v. Trs. of Univ.*,
   549 F. Supp. 3d 836 (N.D. Ind. 2021),
   *vacated as moot*, 24 F.4th 638 (7th Cir. 2022) ............................................42, 43

*Koontz v. St. Johns River Water Management District*,
   570 U.S. 595 (2013)........................................52

*Leaphart v. Prison Health Services, Inc.*,
   2010 WL 5391315 (M.D. Pa. Nov. 22, 2010) .............................54, 56

*Leavitt v. Wells Fargo Bank, N.A.*,
   2009 U.S. Dist. LEXIS 38258 (D. Az. May 1, 2009) ........................................49

*Lee v. Kan. City S. Ry. Co.*,
   574 F.3d 253 (5th Cir. 2009) ...............................33

*Legal Servs. v. Arnett*,
   114 F.3d 135 (9th Cir. 1997) ................................52

*Leong v. Potter*,
347 F.3d 1117 (9th Cir. 2003) ..............................................................23

*Manatt v. Bank of America, NA*,
339 F.3d 792 (9th Cir. 2003) .................................................................40

*Manhattan Cmty. Access Corp. v. Halleck*,
139 S. Ct. 1921 (2019)..........................................................................51

*McDonnell Douglas Corp. v. Green*,
411 U.S. 792 (1973)...............................................................................23

*McGee v. Allstate Ins. Co.*,
2011 U.S. Dist. LEXIS 89081 (E.D.N.Y. Aug. 3, 2011) .....................52

*McKinley v. Princeton Univ.*,
2023 U.S. Dist. LEXIS 75602 (D.N.J. Apr. 28, 2023).........................26

*Memorial Hospital v. Maricopa County*,
415 U.S. 250 (1974)...............................................................................53

*Metzler Inv. GMBH v. Corinthian Colleges, Inc.*,
540 F.3d 1049 (9th Cir. 2008) ..............................................................53

*Mitchell v. Toldeo Hosp.*,
964 F.2d 577 (6th Cir. 1992) .................................................................33

*Mixon v. Charlotte-Mecklenburg Sch.*,
2011 U.S. Dist. LEXIS 124291, at * 11 (W.D.N.C. Aug. 5, 2011)*,
adopted by* 2011 U.S. Dist. LEXIS 124292 (W.D.N.C. Oct. 26,
2011), *aff'd*, 473 F. App'x 271 (4th Cir. 2012) ...................................23

*Moran v. Selig*,
447 F.3d 748 (9th Cir. 2006) .................................................................33

*O'Day v. McDonnell Douglas Helicopter Co.*,
79 F.3d 756 (9th Cir. 1996) ..................................................................47

*O'Hailpin v. Hawaiian Airlines, Inc.*,
583 F. Supp. 3d 1294 (D. Haw. 2022)...................................................25

*Oklevueha Native Am. Church of Haw., Inc. v. Lynch*,
828 F.3d 1012 (9th Cir. 2016) ..............................................................26

*Passantino v. Johnson & Johnson Consumer Prods.*,
212 F.3d 493 (9th Cir. 2000) ...............................................................46

*Perry v. Sindermann*,
408 U.S. 593 (1972)...............................................................................53

*Peterson v. Hewlett-Packard Co.*,
358 F.3d 599 (9th Cir. 2004) ...........................................32, 33, 34, 48

*Phillips v. County of Allegheny*,
515 F.3d 224 (3d Cir. 2008) ................................................................53

*Pollis v. New School for Social Research*,
913 F. Supp. 771 (S.D.N.Y. 1995) ......................................................34

*Redd v. STPNuclear Operating Co.*,
2014 U.S. Dist. LEXIS 164852 (S.D. Tex. Nov. 25, 2014) ...............33

*Reddy v. Litton Indus.*,
912 F.2d 291 (9th Cir. 1990) ..............................................17, 37, 49

*Regan v. Taxation with Representation*,
461 U.S. 540 (1983)...............................................................................53

*Reina-Rodrgiuez v. United States*,
655 F.3d 1182 (9th Cir. 2011) ......................................... 18, 35-36, 38

*Rendell-Baker v. Kohn*,
457 U.S. 830 (1982)...............................................................................55

*Rennie v. Klein*,
653 F.2d 836 (3d Cir. 1981),
*vacated and remanded*, 458 U.S. 1119 (1982) ..................................53

*Roman Catholic Diocese of Brooklyn v. Cuomo*,
141 S. Ct. 63 (2020).............................................................................52

*Ross v. Colorado DOT*,
2012 U.S. Dist. LEXIS 162591 (D. Colo. Nov. 14, 2012)..........................41, 43

*Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*,
547 U.S. 47 (2006).................................................................................52

ix

*Rutan v. Republican Party*,
497 U.S. 62 (1990) .............................................................................53

*Smith v. Marsh*,
194 F.3d 1045 (9th Cir. 1999) ...............................................48, 50, 53

*Somos v. Classic MS, LLC*,
2022 U.S. Dist. LEXIS 175260 (N.D. Oh. Sept. 27, 2022)..........31, 33

*Speer v. UCOR, LLC*,
2022 U.S. Dist. LEXIS 157271 (E.D. Tenn. Aug. 31, 2022)............25

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001) .................................................................9

*Surrell v. Cal. Water Serv.*,
518 F.3d 1097 (9th Cir. 2008) ...................................................40-41, 43

*Texas Dep't of Community Affairs v. Burdine*,
450 U.S. 248 (1981)..........................................................................23

*Together Employees v. Mass General Brigham Inc.*,
573 F. Supp. 3d 412 (D. Mass. 2021),
*aff'd* 32 F.4th 82 (1st Cir. 2022) ................................................25, 46

*Village of Willowbrook v. Olech*,
528 U.S. 562 (2000)..........................................................................53

*Warre v. Comm'r of Soc. Sec. Admin.*,
439 F.3d 1001 (9th Cir. 2006) .............................................................18

*Washington v. Glucksberg*,
521 U.S. 702 (1997)..........................................................................52

*Washington v. Harper*,
494 U.S. 210 (1990)..........................................................................52

*White v. Napoleon*,
897 F.2d 103 (3d Cir. 1990) .............................................................53

*Wise v. Inslee*,
  2022 U.S. Dist. LEXIS 76793 (E.D. Wa. Apr. 27, 2022),
  *appeal dismissed*, 2022 U.S. App. LEXIS 33053 (9th Cir. Oct. 7,
  2022) ................................................................................................. 30-31, 46

*Yartzoff v. Thomas*,
  809 F.2d 1371 (9th Cir. 1987) .......................................................... 23

*Youngberg v. Romeo*,
  457 U.S. 307 (1982) ........................................................................... 52

## Statutes

21 U.S.C. § 360bbb-3 ................................................................................ 4, 20

28 U.S.C. § 1331 ........................................................................................... 4

42 U.S.C. § 1983 ............................................................................ 1, 3, 4, 50

42 U.S.C. § 2000e-2 .................................................................................. 1, 4

42 U.S.C. § 2000e-3 .................................................................................. 1, 4

## Rules

Fed. R. Civ. Proc. 12 ................................................................................ 17

## Other Authorities

Abby Patkin, *Fact check: Masks won't give you lung cancer; some
  masks do include chemicals*, USA Today (Nov. 11, 2020),
  https://www.usatoday.com/story/news/factcheck/2020/11/11/fact-
  check-masks-dont-lead-lung-cancer-but-some-include-
  chemicals/6176080002/ ..................................................................... 37

Centers for Disease Control, *Selected Adverse Events Reported after
  COVID-19 Vaccination* (Mar 7, 2023),
  https://www.cdc.gov/coronavirus/2019-
  ncov/vaccines/safety/adverse-events.html ....................................... 19

Food & Drug Administration, *Coronavirus (COVID-19) Update: FDA Authorizes Changes to Simplify Use of Bivalent mRNA COVID-19 Vaccines* (April 18, 2023), https://www.fda.gov/news-events/press-announcements/coronavirus-covid-19-update-fda-authorizes-changes-simplify-use-bivalent-mrna-covid-19-vaccines....................................19

Food & Drug Administration, *In Vitro Diagnostic EUAs*, https://www.fda.gov/medical-devices/covid-19-emergency-use-authorizations-medical-devices/in-vitro-diagnostics-euas ...................................9

Hangyu Xu, et ano., *Effect of Chronic Hypoxia and Hypercapnia on Learning and Memory Function in Mice and the Expression of NY and CGRP in Brain* (2018), https://journals.sagepub.com/doi/10.1177/2058739218818956.........................38

Jessica McDonald, *Posts Misinterpret Pfizer COVID-19 Vaccine Safety Monitoring Document*, FactCheck.org (Mar. 18, 2022), https://www.factcheck.org/2022/03/scicheck-posts-misinterpret-pfizer-covid-19-vaccine-safety-monitoring-document/.....................................21

Catalina Jaramillo, *It's Not News, Nor 'Scandalous,' That Pfizer Trial Didn't Test Transmission*, FactCheck.org (Oct. 18, 2022), https://www.factcheck.org/2022/10/scicheck-its-not-news-nor-scandalous-that-pfizer-trial-didnt-test-transmission/..........................................20

Jeff Cercone, *Alleged revelation about Pfizer vaccine trial is nothing new*, Politifact (Oct. 13, 2022), https://www.politifact.com/factchecks/2022/oct/13/instagram-posts/alleged-revelation-about-pfizer-vaccine-trial-noth/ ..................................20

Rahul Jitendra Vakharia, et al., *To Study Acute Changes in Brain Oxygenation on MRI in Healthcare Workers Using N95 Mask and PPE Kits for Six Hours a Day* (2021), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC8817801/..............................38

Raytheon Technologies Corporation, Form 10-K for the Fiscal Year Ended December 31, 2022, *available at* https://www.sec.gov/ix?doc=/Archives/edgar/data/101829/000010182923000009/rtx-20221231.htm ...................................................53

Reuters Fact Check, *Fact Check-FDA Did Not Recall All COVID-19 PCR Tests* (July 29, 2021), *available at* https://www.reuters.com/article/factcheck-fda-pcr-test/fact-check-fda-did-not-recall-all-covid-19-pcr-tests-idUSL1N2P51XC .............................9

U.S. Dep't of Health and Human Services, *COVID-19 Vaccines*, https://www.hhs.gov/coronavirus/covid-19-vaccines/index.html#:~:text=COVID%2D19%20vaccines%20are%20available,of%20immigration%20or%20insurance%20status. ............... 9-10

U.S. EQUAL EMP. OPPORTUNITY COMM'N, WHAT YOU SHOULD KNOW ABOUT COVID-19 AND THE ADA, THE REHABILITATION ACT, AND OTHER EEO LAWS (2022).......................24

## PRELIMINARY STATEMENT

Plaintiffs-Appellants Lisa Leake, Kristen Grace, Joseph Heyser, Christopher Stein, and Leslie Zepeda (collectively, "Plaintiffs") raise arguments on appeal that are so divorced from their complaint (the "Complaint") and the record below that it is almost as if Plaintiffs are arguing about a different case than the one actually before this Court. In the District Court, Plaintiffs asserted claims exclusively under 42 U.S.C. §§ 2000e-2 and 2000e-3 ("Title VII") based upon alleged religious discrimination. The District Court granted Defendant-Appellee Raytheon Company's ("Raytheon") motion to dismiss those claims. On appeal, Plaintiffs abandon their arguments below and ignore the Complaint, the record, and the District Court's decision. Notwithstanding Plaintiffs' improper attempts to rewrite their pleading and the record, the District Court's decision was correct and should be affirmed.

In the District Court, Plaintiffs asserted three vague, duplicative, and overlapping claims under Title VII for: (1) disparate treatment based upon religion; (2) hostile work environment based upon religion; and (3) retaliation based upon religion. Plaintiffs did not assert a claim for failure to accommodate under Title VII. Nor did Plaintiffs assert any constitutional claims or claims under 42 U.S.C. § 1983, presumably because Raytheon is a private employer.

1

Plaintiffs admitted below that Raytheon's COVID-19 vaccination policy (the "Policy") applied to all employees, regardless of their religious beliefs. They admitted that Raytheon's neutral Policy allowed for exemptions from the Policy based on, *inter alia*, religious beliefs that conflicted with COVID-19 vaccination. They alleged that Raytheon issued "blanket" exemptions for both religious and non-religious objections to the Policy. Plaintiffs further admitted below—contrary to what they now assert on appeal—that every single one of them applied for, and received, an exemption from the Policy, subject to their complying with certain health and safety conditions imposed upon religious and non-religious exemptions alike: masking, social distancing, and regular testing.

Plaintiffs asserted below that they refused to comply with those health and safety conditions. They admitted that they resigned or were terminated from their jobs ***not*** because of their alleged religious beliefs or because they sought (and received) exemptions from the Policy, but because they refused to comply with the health and safety conditions. Plaintiffs also conceded below that they had no religious objections to masking, social distancing, or testing.

Under these circumstances, Plaintiffs' Complaint did not even come close to stating any claims under Title VII. As such, the District Court properly dismissed the Complaint, with prejudice.

Faced with the District Court's order, Plaintiffs' appeal brief directly contradicts the allegations in their complaint. Plaintiffs raise new arguments regarding the efficacy and safety of the COVID-19 vaccines, masks, and testing that are demonstrably false, were not raised below, and underscore that their purported objections were not religious in nature. Plaintiffs' unsupported statements about "experimental" vaccines and "carcinogenic" masks and testing swabs are very clearly secular objections.

In addition, Plaintiffs' arguments are irrelevant. Plaintiffs themselves alleged that they **were not required to get the vaccine** because they received exemptions from the Policy. There was no "Hobbesian choice": Plaintiffs were never forced to be vaccinated or lose their jobs. They received exemptions from the vaccination Policy but refused to comply with the health and safety conditions for those exemptions based on their concededly secular objections.

Plaintiffs also raise a series of brand-new constitutional arguments regarding strict scrutiny, balancing tests, and rational basis. In addition to the fact that Plaintiffs never raised these arguments below, and therefore waived them, the arguments are also irrelevant because Plaintiffs' claims were brought exclusively under Title VII, not the U.S. Constitution or 42 U.S.C. § 1983. Nor could Plaintiffs have brought constitutional claims below because Raytheon is a private

employer, not a government actor.  The District Court did not, and had no occasion to, address constitutional arguments.  This Court should not address them either.

Put simply, Plaintiffs' own Complaint confirmed that they had not stated, and could never state, valid Title VII claims against Raytheon.  Although Plaintiffs ignore and contradict their allegations on appeal, and attempt to assert new claims nowhere found in the Complaint, they are bound by the allegations of their own pleading.  The District Court's decision was correct and should be affirmed.

## JURISDICTIONAL STATEMENT

Raytheon largely agrees with Plaintiffs' jurisdictional statement (Br. 13),[2] except to the extent that Plaintiffs assert that the District Court had subject matter jurisdiction under 28 U.S.C. § 1331 based on "the Fourteenth Amendment of the United States Constitution, 42 U.S.C. § 1983, and 21 U.S.C. § 360bbb-3."  Br. 13. The District Court did ***not*** have subject matter jurisdiction based upon the Fourteenth Amendment, 42 U.S.C. § 1983, or 21 U.S.C. § 360bbb-3, because Plaintiffs did not assert any causes of action under those provisions.  *See* ER-38-54.[3]  Plaintiffs brought claims exclusively under Title VII, 42 U.S.C. §§ 2000e-2 and 2000e-3.  It is Title VII that provided the District Court with subject matter jurisdiction, not the provisions Plaintiffs improperly attempt to rely upon for the

---

[2] References to "Br." are to the "corrected" Brief of Appellants uploaded by the Clerk of Court on May 11, 2023 (Dkt. No. 13).

[3] References to "ER-" are to the "corrected" version of the Excerpts of Record, uploaded by the Clerk of Court on May 11, 2023 (Dkt. No. 16).

first time on appeal. Raytheon otherwise agrees with Plaintiffs' jurisdictional statement.

## STATEMENT OF THE ISSUES

1.      Whether the District Court properly held that Plaintiffs could not state a claim for disparate treatment under Title VII where, *inter alia*, they failed adequately to allege that they were members of a protected class and their own allegations confirmed that they were granted exemptions from Raytheon's facially neutral vaccination Policy?

2.      Whether the District Court properly held that Plaintiffs could not state a claim for hostile work environment under Title VII where, *inter alia*, Plaintiffs conceded that they received exemptions from the vaccination Policy and failed to allege any "hostile" treatment?

3.      Whether the District Court properly held that Plaintiffs could not state a claim for retaliation under Title VII where, *inter alia*, Plaintiffs admitted that they did not suffer adverse employment actions due to their religious beliefs, but rather because they refused to comply with the masking, testing, and social distancing requirements of their exemptions?

## STATEMENT OF THE CASE

Plaintiffs' appellate brief raises many "factual" allegations that were never asserted in the District Court and are irrelevant to this appeal. Raytheon

summarizes the facts relevant to this appeal below, and addresses many of Plaintiffs' new allegations in the Argument section below.  Because of their irrelevance to this appeal, however, Raytheon will not address each and every one of Plaintiffs' baseless new assertions, including their non-sequiturs about vaccine manufacturers being "felons," government officials "brib[ing]" people to take the vaccines, "totalitarian onslaught[s]," and related allegations.  *See* Br. 45-50.

## I.    RAYTHEON'S NEUTRAL COVID-19 VACCINATION POLICY AND PLAINTIFFS' OBJECTIONS.

Plaintiffs were employees of Raytheon in Arizona.  ER-40 ¶¶ 9-13.[4]  On September 15, 2021, Raytheon announced that all of its employees would be required to be vaccinated against COVID-19, *i.e.*, the Policy, and issued a "Frequently Asked Questions" document providing details regarding the Policy.  ER-41 ¶¶ 18-19.

All of the Plaintiffs objected to receiving COVID-19 vaccines.  ER-41 ¶ 20.  "Multiple" Plaintiffs, but not all Plaintiffs, alleged below that they hold "the sincere religious belief" of an unspecified religious denomination that "the human body is God's temple, and that they must not take anything into their bodies that God has forbidden or that would alter the functions of their body such as by inducing the production of a spike protein in a manner not designed by God."  ER-

---

[4] Raytheon accepts the facts recited in Plaintiff's Complaint as true for purposes of this appeal only.

41-42 ¶ 21.  The Complaint did not identify who the "multiple" Plaintiffs are or the religious beliefs of the other Plaintiffs who did not fall into this category.  *See id.*

"Multiple," but again not all, Plaintiffs objected to the vaccines for non-religious reasons, based on their fear of "serious adverse [physical or medical] reactions."  ER-42 ¶ 23.  Again, it was not clear which Plaintiffs held these fears and which did not.  *See id.*  "Many," but not all, "of the Plaintiffs have contracted and recovered from COVID-19."  *Id.* ¶ 27.  These particular Plaintiffs were, again, not identified in the Complaint.  *See id.*  Plaintiffs admitted that, while they objected to the vaccine for various different reasons (their alleged religious beliefs, fears of adverse reactions, and/or prior contracting of COVID-19), they did "not object to other non-permanent safety measures, such as physical distancing, sick leave, indoor masking, and teleworking."  ER-43 ¶ 29.

Plaintiffs alleged below that they, along with every other Raytheon employee, were sent emails regarding the Policy.  ER-42 ¶ 26.  Plaintiffs further alleged that they saw website banners on Raytheon's webpage and physical signage in the common areas of Raytheon's workplace regarding the Policy, which were visible to all Raytheon employees.  *See id.* ¶¶ 25, 26.

Plaintiffs also alleged that beginning on September 15, 2021, Raytheon provided "blanket" exemptions from its Policy for all employees who sought

7

exemptions for medical or religious reasons, on the condition that those exempt employees agree to "mask wear and weekly COVID testing." ER-45 ¶ 47.

## II. EACH OF THE PLAINTIFFS RECEIVES AN EXEMPTION FROM THE POLICY.

Contrary to Plaintiffs' new assertion on appeal that two Plaintiffs, Leake and Heyser, never received exemptions from the policy (Br. 15), Plaintiffs alleged in their complaint that *each of them* sought, and received, exemptions from the Policy, but that they refused to comply with the health and safety conditions of those exemptions:

**Plaintiff Leake**: On November 1, 2021, Leake "submitted a request for religious accommodation." ER-43 ¶ 35. Leake did not allege any details about her specific religious beliefs. *See id.* Contrary to what is now claimed on appeal (Br. 15), Leake alleged below that her "religious accommodation was approved with a … weekly testing stipulation." ER-44 ¶ 36. Leake asserted that this stipulation "was in violation of Plaintiff's accommodation statement explaining sincerely held religious beliefs," but she did not explain how or why. *See id.* In fact, Leake admitted that her concerns about testing were not religious at all, but rather based on the secular (and false) assertion that the tests "were the most invasive EUA [Emergency Use Authorization] versions, that have since been recalled by the

FDA." *Id.* ¶ 36.[5]  Leake alleges that she was fired on February 1, 2022, not because of her religious beliefs, but because of "non-compliance with the Defendant's Covid 19 mandate" (*i.e.*, her refusal to submit to testing).  *Id.* ¶ 37.

**Plaintiff Grace**:  Grace alleged that on February 25, 2021, she "requested a transfer to a remote position, due to her sincere religious objections … that precluded her from complying to [sic] Defendant's COVID-19 policy."  ER-44 ¶ 39.  Raytheon's Policy was not announced until September 15, 2021, *see* ER-41 ¶ 18, and the Complaint did not explain what "COVID-19 policy" was in effect as of February 25, 2021, a time period in which vaccines were not widely available to the public.  *See* ER-44 ¶ 39.[6]  The Complaint also did not explain Grace's religious

---

[5] Although the allegations of the Complaint had to be taken as true on Raytheon's motion to dismiss below, Plaintiffs' allegation that the PCR tests that Raytheon purportedly required (*see* ER-46 ¶ 57) were recalled by the FDA is demonstrably false, a fact of which this Court can take judicial notice.  *See, e.g.,* Food & Drug Administration, *In Vitro Diagnostic EUAs*, https://www.fda.gov/medical-devices/covid-19-emergency-use-authorizations-medical-devices/in-vitro-diagnostics-euas (last visited June 12, 2023) (listing the PCR nasal swab tests authorized by the FDA); Reuters Fact Check, *Fact Check-FDA Did Not Recall All COVID-19 PCR Tests* (July 29, 2021), *available at* https://www.reuters.com/article/factcheck-fda-pcr-test/fact-check-fda-did-not-recall-all-covid-19-pcr-tests-idUSL1N2P51XC (last visited June 12, 2023) (FDA confirmed that it "has authorized more than 300 tests … many of which are PCR tests"); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (on a motion to dismiss, "[t]he court need not … accept as true allegations that contradict matters properly subject to judicial notice").

[6] The COVID-19 vaccines did not become available to all individuals over the age of 16 until April 19, 2021.  *See* U.S. Dep't of Health and Human Services, *COVID-19 Vaccines*, https://www.hhs.gov/coronavirus/covid-19-

beliefs.  *See id.*  Grace alleged that on May 7, 2021, Raytheon "denied [her] request for a remote position" and instead placed her on "involuntary medical leave."  *See id.* ¶ 40.

Grace alleged, without any explanation, that on September 24, 2021,[7] she "secured a remote position" with Raytheon.  *Id.* ¶ 41.  She then applied for a religious exemption, which was allegedly "denied based on Plaintiff's [unspecified] medical disability."  *Id.* ¶ 42.  Grace alleged, however, that Raytheon "acknowledged [her] ADA disability," *i.e.*, provided her with a medical exemption. *Id.* ¶ 41.  Grace alleged that she was subject to unspecified "harassment, coercion, threats, and humiliation," and was ultimately terminated on January 31, 2022 "for non-compliance to [sic] Defendant's COVID-19 mandate."  ER-43 ¶ 43.

**Plaintiff Heyser**:  Heyser alleged that on September 30, 2021, Raytheon "lifted masking and social distancing requirements for vaccinated employees only, making [Heyser] easily identifiable as a person who had a medical or religious objection."  ER-45 ¶ 48.  Contrary to Plaintiffs' statement on appeal (Br. 15), Plaintiffs alleged that Heyser received an exemption from the Policy.  *Id.* ¶¶ 47-48. Heyser conceded that he refused to abide by the health and safety conditions of his

---

vaccines/index.html#:~:text=COVID%2D19%20vaccines%20are%20available,of %20immigration%20or%20insurance%20status (last visited June 12, 2023).  The Court may take judicial notice of this government website.  *See* n.5, *supra*.

[7] This paragraph of the Complaint says "September 24, 2022," but since that is the date on which the Complaint was filed, Plaintiffs presumably meant 2021.

exemption, and was "repeatedly advised and warned" that the consequence of his failure to comply "would be termination." *Id.* ¶¶ 49-51. Heyser opted to resign on January 14, 2022. ER-46 ¶ 52.

**Plaintiff Stein**: Stein alleged that he was unable to obtain a medical exemption because he did not have "a doctor's note" supporting such an exemption. ER-46 ¶ 54. Stein was instead advised that he could seek a religious exemption, which would allegedly require Stein to comply with "masking, social distancing, weekly testing." ER-46 ¶ 55. Stein objected to these health and safety conditions on non-religious grounds because they were "only required … of unvaccinated employees" and because they involved the use of "invasive PCR tests." ER-46 ¶ 56. Stein alleged that he refused to comply with the health and safety conditions, and was terminated on January 31, 2022 "for non-compliance." *Id.* ¶¶ 59-60.

**Plaintiff Zepeda**: Zepeda alleged that she submitted "a religious accommodation based on sincerely held faith for [sic] the COVID 19 vaccine," but did not explain that "sincerely held faith." ER-47 ¶ 63. Zepeda further alleged that she sought "a medical accommodation to submit a saliva only test for COVID 19." *Id.* Zepeda did not allege that Raytheon refused her request for a "saliva only test." *See id.* Instead, Zepeda alleged that she was terminated on February 2, 2022, not because of her religious beliefs, but because she refused to provide "a waiver of

HIPPA [sic] rights" as part of the testing requirement for her exemption from the Policy. *Id.* ¶¶ 65-66.

## III. DESPITE CONCEDING THAT THEY DID NOT SUFFER ADVERSE EMPLOYMENT ACTION DUE TO THEIR RELIGIOUS BELIEFS, PLAINTIFFS FILE SUIT.

On September 24, 2022, Plaintiffs filed the Complaint on behalf of themselves individually and on behalf of a purported class of similarly situated individuals. ER-38-54. Based on the allegations summarized above, Plaintiffs asserted three causes of action: (1) "DISCRIMINATION IN VIOLATION OF 42 U.S. CODE §§2000e-2(a)(1) (2)(a)(2)"; (2) "WRONGFUL TERMINATION IN VIOLATION OF 42 U.S. CODE §§2000e-2(a)(1)"; and (3) "RETALIATION IN VIOLATION OF 42 U.S. Code § 200e-3 [sic]." ER-50-54 ¶¶ 85-106 (capitalization in original). The Complaint also included a series of conclusory class allegations. ER-47-50 ¶¶ 67-84. The Complaint did not include any Title VII claims for failure to accommodate, or any Constitutional claims. *See* ER-38-54.

## IV. THE DISTRICT COURT DISMISSES THE COMPLAINT WITH PREJUDICE.

On December 2, 2022, Raytheon filed a motion to dismiss the Complaint for failure to state a claim. ER-19-37.[8] On December 17, 2022, Plaintiffs filed a four-page opposition. ER-15-18. Plaintiffs argued, without citing to the Complaint, that Raytheon "willfully targeted employees with deeply held religious beliefs[,]" "created an accommodation process that was" discriminatory, and violated Plaintiffs' rights by imposing an "unreasonable testing condition" and requiring them "to waive all HIPAA rights." ER-16-17 ¶ 9.

Plaintiffs did not attempt to establish that each Plaintiff was a member of a protected class. *See* ER-15-18. Plaintiffs did not dispute that, as per their own allegations, religious and non-religious objectors had to comply with the same health and safety conditions as part of receiving exemptions from the Policy. *See id.* Plaintiffs conceded that they had no religious objections to the masking and testing protocol or the alleged HIPAA waiver. *See id.* Essentially, Plaintiffs' argument was that termination or resignation from their employment "is pretty dang adverse (sic)." ER-16 ¶ 5 ("sic" in original). Plaintiffs did not seek leave to amend or propose any amendments to the Complaint. ER-15-18.

---

[8] Raytheon separately filed a motion to strike Plaintiffs' class allegations, which the District Court denied as moot (ER-14), but Plaintiffs have not appealed from that ruling, which is, accordingly, not at issue on appeal.

On February 27, 2023, the District Court issued a 12-page opinion granting Raytheon's motion and dismissing Plaintiffs' Complaint with prejudice. ER-3-14. The District Court held that "Plaintiffs' overlapping allegations lack the legal and factual support to state a Title VII claim." ER-10. As set forth further below in the Argument section, the District Court held that Plaintiffs failed to allege the *prima facie* elements of any of their three Title VII causes of action. ER-10-13. In light of Plaintiffs' allegations in the Complaint, by which they are bound, the District Court further held that "any amendment to the Complaint would be futile. Therefore, dismissal of the Complaint with prejudice is appropriate." ER-13.

Many of Plaintiffs' representations to this Court in their Statement of the Case are false. First, the District Court never held "that Plaintiffs' claims did not involve fundamental rights or a suspect classification." *See* Br. 19. Second, the District Court never "applied rational basis review" and did not hold that the Policy "was rationally related to a legitimate government interest." *See id.* None of these issues or arguments were ever raised in the District Court, in part because Plaintiffs never asserted any constitutional claims and there was no "government interest" at issue, since Raytheon is a private company. *See* ER-3-14, ER-15-18, ER-38-54. Third, the District Court did not hold "that Raytheon had legal authority under the Executive Order, [sic] to mandate these experimental COVID vaccines as a condition of employment." *See* Br. 19. The District Court did not make any

holdings or findings relating to any Executive Orders because, again, it had no occasion to do so.  *See* ER-3-14, ER-15-18, ER-38-54.

Plaintiffs filed their notice of appeal on March 5, 2023.  ER-55-56.

**SUMMARY OF THE ARGUMENT**

The District Court's decision should be affirmed.

*First*, Plaintiffs raise a host of spurious claims relating to the efficacy and safety of the COVID-19 vaccine.  Raytheon addresses some of these new assertions briefly because they are egregiously false, but Plaintiffs' assertions are irrelevant to the issues raised on this appeal.  Their only relevance is their tendency to confirm that Plaintiffs' objections to the Policy were secular and not religious.

*Second*, the District Court properly dismissed Plaintiffs' Title VII disparate treatment claim because Plaintiffs failed adequately to allege they were members of a protected class or that they were subjected to any disparate treatment based upon their alleged protected status.  In any event, Plaintiffs never pled, and could not plead, facts from which a court could infer discriminatory intent by Raytheon.  Plaintiffs affirmatively alleged that they sought and obtained exemptions from the Policy and were treated the same as every other employee who sought and obtained an exemption.  There was no disparate treatment.

*Third*, the District Court properly dismissed Plaintiffs' Title VII claim for hostile work environment.  Plaintiffs did not come close to alleging the requisite

"extreme" conduct. Facially neutral health and safety requirements (*e.g.*, masking and testing) and facially neutral communications to all employees are not "hostile" in any way, let alone of the "extreme" nature required to state a claim.

*Fourth*, the District Court properly dismissed Plaintiffs' Title VII retaliation claim. In addition to their failure adequately to allege membership in a protected class or any protected activity, there was no causal connection between Plaintiffs' alleged religious beliefs and their adverse employment actions (*i.e.*, resignation or termination). Plaintiffs ***admitted*** that they were not terminated, or did not resign, because of their religious beliefs, but because they refused to mask, test, and distance. The causal link was missing, and therefore Plaintiffs failed to state a claim.

*Fifth*, Plaintiffs raise for the first time on appeal a brand-new and baseless series of purported Equal Protection and Due Process arguments. These arguments are improper and were waived because they were not raised below. Plaintiffs did not assert any constitutional claims in their complaint. Moreover, Plaintiffs could not have asserted constitutional claims against Raytheon because it is a private company, not a government actor.

At bottom, Plaintiffs' arguments on appeal are an improper attempt to rewrite their Complaint. Plaintiffs appear to recognize that they failed to state any claims and had no religious objections to Raytheon's Policy. Plaintiffs' appeal

16

brief confirms that they have deep-seated, *secular* objections to getting vaccinated, wearing masks, and testing for COVID-19. Plaintiffs' concerns about the vaccine being "experimental" and "unsafe," or masks and testing swabs being "carcinogenic," are not religious in nature. Plaintiffs' secular predilections do not give rise to any legal claims against Raytheon under Title VII or otherwise. The District Court's decision should be affirmed.

## STANDARD OF REVIEW

This Court reviews the dismissal of Plaintiffs' causes of action for failure to state a claim *de novo* and affirms where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Reddy v. Litton Indus.*, 912 F.2d 291, 293 (9th Cir. 1990). A complaint will be dismissed if it does not "contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see* Fed. R. Civ. Proc. 12(b)(6); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679.

## ARGUMENT

## I. PLAINTIFFS' NEW "FACTUAL" ARGUMENTS ARE WRONG AND IRRELEVANT.

Plaintiffs raise arguments based upon new "facts," not asserted below, in the "Introduction" and "Statement of Facts" sections of their appeal brief.[9]  Because these "facts" and arguments were not presented below, the new "facts" cannot be presented in this appeal, the new arguments are waived, and the Court should not consider them.  *Reina-Rodrgiuez v. United States*, 655 F.3d 1182, 1193 (9th Cir. 2011) (refusing to consider evidence that was "not present[ed] … to the district court, and … is not part of the district court record"); *Alexander v. Saul*, 817 F. App'x 401, 405 (9th Cir. 2020) (citing *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1007 (9th Cir. 2006)) ("these issues were not raised below, they are waived and we do not consider them").  These statements also have no connection to the legal issues on this appeal and consist largely of baseless vaccine-related conspiracy theories.  While substantively irrelevant, the statements do confirm that Plaintiffs' objections to Raytheon's Policy were not based on religious concerns, but rather on Plaintiffs' secular concerns relating to the safety of the vaccines.  Because the assertions are egregiously misleading, however, Raytheon briefly responds to them before addressing the issues actually on appeal:

---

[9] Plaintiffs also raise new "factual" allegations in the "Argument" section, but, to the extent the assertions have any relevance to the appeal, Raytheon addresses them below in connection with the various legal arguments.

- Plaintiffs refer, without citation, to an April 18, 2023 statement by the Food & Drug Administration ("FDA") (Br. 10), which Plaintiffs mischaracterize.[10] The FDA's statement, made after the District Court's decision below, is irrelevant to Plaintiffs' appeal, including because Plaintiffs were granted exemptions from the Policy and were never required to be vaccinated.

- Plaintiffs make unsupported assertions regarding "adverse events" purportedly shown in the Vaccine Adverse Event Reporting System ("VAERS"). Br. 11. Plaintiffs do not cite VAERS, however, but to an unverified, inadmissible Internet posting not submitted to the District Court, listed as "(5)" in Plaintiffs' table of authorities. *See id.* Plaintiffs' figures appear contrary to the actual VAERS data.[11] In any event, Plaintiffs' unverified statements are irrelevant: none of these alleged statistics were before the District Court and they have no bearing on whether Plaintiffs can state their claims for religious discrimination under Title VII.

- Plaintiffs make four allegations that they claim must be "accept[ed] … as True [sic]:" (1) "COVID-19 vaccines do not prevent transmission"; (2) "COVID-19 vaccines do not prevent infection"; (3) "COVID-19 vaccines cannot be shown to prevent outbreak of disease"; and (4) "COVID-19 vaccines cannot be proven to promote economy and efficiency in federal contracting." Br. 11. Plaintiffs do not cite to the Complaint for these assertions, nor could they, as none of these allegations are in the Complaint. *See* ER-38-54.[12] Plaintiffs cite to an inadmissible website post, not

---

[10] *See* Food & Drug Administration, *Coronavirus (COVID-19) Update: FDA Authorizes Changes to Simplify Use of Bivalent mRNA COVID-19 Vaccines* (April 18, 2023), https://www.fda.gov/news-events/press-announcements/coronavirus-covid-19-update-fda-authorizes-changes-simplify-use-bivalent-mrna-covid-19-vaccines (last visited June 12, 2023).

[11] *See, e.g.,* Centers for Disease Control, *Selected Adverse Events Reported after COVID-19 Vaccination* (Mar. 7, 2023), https://www.cdc.gov/coronavirus/2019-ncov/vaccines/safety/adverse-events.html (last visited June 12, 2023).

[12] The closest Plaintiffs came in the Complaint was a conclusory allegation that "Defendants should have implemented mitigation protocols irrespective of vaccination status, as those who have been vaccinated can carry, transmit, and become infected with COVID-19." ER-43 ¶ 31.

19

submitted below, which has been debunked repeatedly.[13] This is all irrelevant: the efficacy and safety of the vaccine have nothing to do with whether Plaintiffs—who were exempted from the Policy and not required to be vaccinated—can state claims for discrimination based upon their alleged religious beliefs in violation of Title VII.

- Plaintiffs raise Executive Order 14042 and litigation regarding that Executive Order (Br. 14-15), but these assertions are similarly irrelevant. Although Plaintiffs mentioned the Executive Order in passing in their Complaint (ER-43), this case does not involve a challenge to the Executive Order. The only question before the District Court, and now before this Court, was whether Plaintiffs adequately alleged that Raytheon subjected Plaintiffs to disparate treatment, a hostile work environment, or retaliation based upon their religious beliefs in violation of Title VII. Executive Order 14042 has nothing to do with those issues.

- Plaintiffs also make lengthy allegations regarding Emergency Use Authorization ("EUA"), the purported risks of the COVID-19 vaccines, alleged information obtained through a Freedom of Information Act ("FOIA") request, and alleged statements made by a Pfizer employee to the European Parliament. Br 16-18. All of this information is outside the record and false. Plaintiffs' selective quotation from the EUA statute is misleading.[14] The CDC has refuted Plaintiffs' assertions regarding the purported vaccine risks.[15] Plaintiffs mischaracterize the information from

---

[13] *See, e.g.,* Jeff Cercone, *Alleged revelation about Pfizer vaccine trial is nothing new,* Politifact (Oct. 13, 2022), https://www.politifact.com/factchecks/2022/oct/13/instagram-posts/alleged-revelation-about-pfizer-vaccine-trial-noth/ (last visited June 12, 2023); Catalina Jaramillo, *It's Not News, Nor 'Scandalous,' That Pfizer Trial Didn't Test Transmission*, FactCheck.org (Oct. 18, 2022), https://www.factcheck.org/2022/10/scicheck-its-not-news-nor-scandalous-that-pfizer-trial-didnt-test-transmission/ (last visited June 12, 2023).

[14] *See* 21 U.S.C. § 360bbb-3(e)(1)(A)(ii)(III) (individuals are to be informed "of the option to accept or refuse administration of the product, ***of the consequences, if any, of refusing administration*** … ***and of the alternatives to the product that are available and of their benefits and risks***" (emphasis added)).

[15] *See* n.11, *supra.*

20

the FOIA document to which they refer.[16]  Plaintiffs also mischaracterize the purported statements made by Pfizer's employee, as well as the import of those statements.[17]

At bottom, Plaintiffs are using this appeal not to press the legal arguments they raised in the District Court, but as an opportunity to publish anti-vaccination rhetoric in a public forum.  Plaintiffs' new allegations from outside the record are ultimately irrelevant, other than to confirm that their objections to Raytheon's Policy were secular rather than religious.

In order to dismiss Plaintiffs' Complaint, the District Court did not need to find that COVID-19 vaccines are safe and effective (though they are),[18] and this Court need not decide those issues.  All of these arguments are a distraction from the real question on appeal: did Plaintiffs state claims under Title VII based on Raytheon requiring Plaintiffs to wear masks, test, and social distance in lieu of getting the vaccine?  The answer to that question, as set forth below, is no.

---

[16] Jessica McDonald, *Posts Misinterpret Pfizer COVID-19 Vaccine Safety Monitoring Document*, FactCheck.org (Mar. 18, 2022), https://www.factcheck.org/2022/03/scicheck-posts-misinterpret-pfizer-covid-19-vaccine-safety-monitoring-document/ (noting "[y]ou cannot call" the adverse effects "vaccine-associated" because "the assessment's not there to show that they were causally related" (internal quotation marks omitted)) (last visited June 12, 2023).

[17] *See* n.13, *supra*.

[18] *See* ns. 6, 11, *supra*.

## II.   THE DISTRICT COURT PROPERLY DISMISSED PLAINTIFFS'
##        TITLE VII DISPARATE TREATMENT CLAIM.

The District Court properly held that Plaintiffs failed to state a claim, and given their Complaint could never state a claim, for their first cause of action for disparate treatment under Title VII.  ER-28-31.  The District Court held that Plaintiffs could not state a disparate treatment claim because

> [a]ll vaccination-exempt employees were treated the same, regardless of the reason for the exemption.  The vaccination mandate never mentioned religion and was therefore facially neutral, and Plaintiffs have not established that Defendant had a discriminatory intent in either issuing the vaccination mandate or implementing health and safety protocols for vaccination-exempt employees.

ER-10-11.  Although the District Court held that the foregoing was sufficient to dismiss the claim, it held also that "Plaintiffs never alleged they were members of any protected class, or what their religious beliefs were," particularly since some Plaintiffs objected to vaccination "not because of religious reasons, but for medical reasons."  ER-11 (citing ER-41-42).  Even if Plaintiffs had adequately alleged membership in a protected class, the District Court held that "they still fail to demonstrate that they were treated any differently from other vaccination-exempt employees."  ER-11.

To establish a *prima facie* case of disparate treatment under Title VII, a plaintiff must introduce evidence that "'give[s] rise to an inference of unlawful

discrimination.'" *Yartzoff v. Thomas*, 809 F.2d 1371, 1374 (9th Cir. 1987) (quoting *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). At the pleading stage, "a plaintiff must show (1) that he belongs to a protected class; (2) he was qualified for the position; (3) he was subject to an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably." *Leong v. Potter*, 347 F.3d 1117, 1124 (9th Cir. 2003) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).

Moreover, "proof of an employer's intent to discriminate is an essential element of a plaintiff's prima facie case." *Forsberg v. Pacific Northwest Telephone Co.*, 840 F.2d 1409, 1418 (9th Cir. 1988) (cited in Br. 28). "The mere fact that Plaintiff subjectively believes she was terminated from employment due to [religious] bias does not make it so…. In the absence of any allegations that Plaintiff suffered differential treatment as the result of her [religion], her [Title VII] claim necessarily fails." *Mixon v. Charlotte-Mecklenburg Sch.*, 2011 U.S. Dist. LEXIS 124291, at * 11 (W.D.N.C. Aug. 5, 2011)*, adopted by* 2011 U.S. Dist. LEXIS 124292 (W.D.N.C. Oct. 26, 2011), *aff'd*, 473 F. App'x 271 (4th Cir. 2012); *see also, e.g., Dema v. Allegiant Air, LLC*, 2014 U.S. Dist. LEXIS 95318, at *4-5 (D. Az. July 11, 2014) (dismissing Title VII claim where "the complaint does not include facts sufficient to create a nexus between Plaintiff's [protected status] and

23

his termination" and did not allege facts "to show that he was terminated because of his" protected status).

Under these standards, the District Court properly dismissed the disparate treatment claim.

### A. Plaintiffs Failed to Allege Protected Status or That They Were Treated Differently Than Similarly Situated Employees.

The District Court correctly held that Plaintiffs failed to plead, and could not plead, the *prima facie* elements of a disparate treatment claim. In particular, as set forth above, the District Court held that Plaintiffs failed adequately to allege their membership in a protected class, or that they were treated differently than similarly situated employees. ER-10-11.

At the outset, it is important to note that Plaintiffs did not allege below that Raytheon failed to provide them with a reasonable accommodation. Nor could they, as Raytheon **granted** Plaintiffs' exemption requests and permitted them to mask, test, and distance instead of receiving the vaccination. ER-44-47 ¶¶ 34-66. The EEOC has stated that masking, testing, and distancing are reasonable accommodations.[19] Courts across the country have held that arguably more

---

[19] U.S. EQUAL EMP. OPPORTUNITY COMM'N, WHAT YOU SHOULD KNOW ABOUT COVID-19 AND THE ADA, THE REHABILITATION ACT, AND OTHER EEO LAWS (2022) at §§ G.5, K.2, K.5 ("as a reasonable accommodation, an unvaccinated employee entering the workplace might wear a face mask, work at a social distance from coworkers or non-employees, work a modified shift, get periodic tests for COVID-19 ….").

onerous accommodations than those offered by Raytheon, such as unpaid leave, are reasonable.[20]

Rather than claiming a failure to accommodate, Plaintiffs' contention below, and now on appeal, was that, despite being granted an accommodation in the form of an exemption from the Policy with certain safety requirements, they were

---

[20] *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 70-71 (1986) ("requiring respondent to take unpaid leave … would generally be a reasonable" accommodation); *E.E.O.C. v. Firestone Fibers & Textiles Co.,* 515 F.3d 307, 315 (4th Cir. 2008) (unpaid leave was reasonable accommodation for a religious employee who needs to miss work for a religious holiday); *O'Hailpin v. Hawaiian Airlines, Inc.*, 583 F. Supp. 3d 1294, 1309-10 (D. Haw. 2022) (undue hardship posed by, *inter alia*, "increased risk that unvaccinated employees … pose to other employees and passengers," "administrative challenges," and "difficulty of scheduling" staff); *Aukamp-Corcoran v. Lancaster Gen. Hosp.*, 2022 U.S. Dist. LEXIS 29355, at *23-24 (E.D. Pa. Feb. 17, 2022) (employer entitled to summary judgment on Title VII claims; employer not required to permit masking accommodation); *Anderson v. United Airlines, Inc.*, 577 F. Supp. 3d 1324, 1333 (M.D. Fla. 2021) (no likelihood of success on claim that "placing unvaccinated employees on unpaid leave is 'unreasonable …'"); *Together Employees v. Mass General Brigham Inc.*, 573 F. Supp. 3d 412, 441 (D. Mass. 2021) *aff'd* 32 F.4th 82 (1st Cir. 2022) (no likelihood of success on Title VII claims because employer's refusal to provide religious exemption justified, as the burden on the employer from, *inter alia*, the "increase[d] risk of spreading the disease" is "certainly not *de minimis*"); *Creger v. United Launch Alliance LLC*, 571 F. Supp. 3d 1256, 1264-65 (N.D. Ala. 2021) (no likelihood of success where private employer would face undue burden, including "added cost and administrative burden of providing for weekly testing in lieu of vaccination"); *Barrington v. United Airlines*, 566 F. Supp. 3d 1102, 1109-10 (D. Colo. 2021) (masking and testing would impose more than a *de minimis* burden on employer); *Speer v. UCOR, LLC*, 2022 U.S. Dist. LEXIS 157271, at *20-22 (E.D. Tenn. Aug. 31, 2022) (plaintiffs had no likelihood of success on Title VII claim even where employer denied all applications for religious accommodations).

treated differently than similarly situated employees based upon their religious beliefs. Plaintiffs failed to state such a claim for at least three independent reasons.

**First**, Plaintiffs did not adequately allege that they are members of a protected class. As set forth above, Plaintiffs alleged that some, but not all, of the Plaintiffs subscribe to the generalized religious belief that the body is God's temple, but did not provide any additional details or explain which Plaintiffs hold that belief. *See* ER-41-42, 44-45, 47 ¶¶ 21, 36, 39, 45, 63. At least one Plaintiff, Stein, did not allege that he had a sincerely held religious belief regarding the COVID-19 vaccine at all. *See* ER-46 ¶¶ 53-60. These conclusory allegations are insufficient under Title VII. *See, e.g., Bolden-Hardge v. Off. of the Cal. State Controller*, 63 F.4th 1215, 1223 (9th Cir. 2023) (in the Title VII context, courts need not "take plaintiffs' conclusory assertions of violations of their religious beliefs at face value" (citing *Oklevueha Native Am. Church of Haw., Inc. v. Lynch*, 828 F.3d 1012, 1016-17 (9th Cir. 2016)); *Friend v. AstraZeneca*, 2023 U.S. Dist. LEXIS 83749, at *7 (D. Md. May 11, 2023) (Title VII claim failed where plaintiff "alleges no facts to allow this Court to assess what Plaintiff's religious beliefs are and how they conflict"); *McKinley v. Princeton Univ.*, 2023 U.S. Dist. LEXIS 75602, at *5 (D.N.J. Apr. 28, 2023) (Title VII claims failed where, *inter alia*, "Plaintiff's Complaint does not identify or specify any religious belief that prevents her from complying with the COVID-19 Policies").

Importantly, even if Plaintiffs had adequately alleged that each of them held religious beliefs that conflicted with the Policy, Plaintiffs did not "allege or argue that the testing [and masking] option conflicted with [their] religious obligations." *See Egelkrout v. Aspirus, Inc.*, 2022 U.S. Dist. LEXIS 128519, at *9 (W.D. Wisc. July 20, 2022); *see* ER-44-47 ¶¶ 36-37, 41-43, 47-52, 55-60, 63-66.[21] Plaintiffs affirmatively alleged that they "did not object to other non-permanent safety measures, such as physical distancing … [and] indoor masking," and that Raytheon could have restricted the spread of COVID-19 by requiring "masking … physical distancing … and voluntary testing of all symptomatic employees." ER-42 ¶¶ 29-30.

Several of the Plaintiffs appear to have nonetheless objected because they believed (falsely) that the tests had been recalled by the FDA,[22] that the tests were "invasive," and that the tests were approved by the FDA only pursuant to EUA—all of which are secular, non-religious objections. ER-44-46, 48 ¶¶ 36, 47, 57, 74. One Plaintiff, Zepeda, also objected to testing because of an alleged HIPAA waiver requirement; which is, again, not a religious objection. ER-47 ¶¶ 65-66. In other words, Leake, Heyser, Stein, and Zepeda admitted below that they objected

---

[21] Although Leake alleged that testing "was in violation of Plaintiff's accommodation statement" in some unspecified manner, she also alleged that her objection to testing was actually based on the EUA and (non-existent) "recall." *See* ER-44 ¶ 36.

[22] *See* n.5, *supra*.

to testing for non-religious reasons, while Grace did not allege having an objection of any kind to testing. *See* 44-47 ¶¶ 36-66. "Having acknowledged that [they were] given an alternative that did not conflict with [their] religious observances, plaintiff[s] ha[ve] pled [their] way out of the … element[s] of [their Title VII] claim." *Egelkrout*, 2022 U.S. Dist. LEXIS 128519, at *9; *see also Friend*, 2023 U.S. Dist. LEXIS 83749, at *7-8 (Title VII claim failed where objections based on "effectiveness of vaccine and the current status of FDA approval" because those "types of assertions (which are little more than a declaration that Plaintiff has the right to make his own decisions) do not constitute religious beliefs").

Under these circumstances, Plaintiffs failed adequately to allege that they were members of a protected class.

**Second**, even if they had alleged membership in a protected class, Plaintiffs did not allege that they were treated differently than individuals outside the protected class. Plaintiffs admitted that Raytheon's Policy applied to ***all*** employees. ER-41 ¶ 18. Plaintiffs conceded that religious exemptions were available and that they, in fact, received religious exemptions. *See* ER-44-47 ¶¶ 34-66, *compare with* Br. 15 (Plaintiffs now claiming on appeal that Leake and Heyser did not receive exemptions). Indeed, Plaintiffs alleged that Raytheon offered a "blanket" exemption to any employee who sought a religious exemption. *See* ER-45 ¶ 47.

Those allegations, without more, were fatal to Plaintiffs' claim. *See, e.g.,*
*Burcham v. City of L.A.*, 562 F. Supp. 3d 694, 708 (C.D. Cal. 2022) (Title VII
claim fails where plaintiffs requested religious exemptions and do not "state that
those requests have been denied or are likely to be denied"); *Beckerich v. St.*
*Elizabeth Med. Ctr.*, 563 F. Supp. 3d 633, 642-43 (E.D. Ky. 2021) ("Plaintiffs have
failed to even suggest that they could raise a prima facie case of religious
discrimination" because "no Plaintiff has been denied a religious exemption").

Moreover, Plaintiffs alleged below that the exemption conditions of
masking, testing, and social distancing were imposed broadly. Those conditions
were not imposed exclusively on a purported protected class of religious objectors.
To the contrary, Plaintiffs alleged that the conditions were imposed equally on
those seeking medical exemptions. ER-45 ¶ 47. In other words, Plaintiffs
affirmatively alleged below that they were treated ***exactly the same*** as Raytheon
employees who sought exemptions for non-religious reasons. *Id.*

**Third** and relatedly, Plaintiffs' own allegations confirmed that they could
not plead any facts from which a court could infer discriminatory intent by
Raytheon. *See Forsberg*, 840 F.2d at 1418 (cited in Br. 28). Plaintiffs
affirmatively alleged that they were not treated differently than other vaccine-
exempt employees because of their purported religious beliefs. Each of the
Plaintiffs affirmatively admitted that they were terminated or resigned not because

of their religious beliefs or their requests for religious exemptions, but because they refused to comply with the masking, testing, and distancing conditions of their exemptions.

Plaintiffs were "terminated for non-compliance with the Defendant's COVID-19 mandate," *i.e.* refusing to comply with the "weekly testing stipulation," ER-44 ¶¶ 36-37 (Leake); "terminated for non-compliance with the Defendant's COVID-19 mandate" in an unspecified manner, ER-44-45 ¶¶ 41-43 (Grace); allegedly forced to resign because of a desire not to comply with "mask wear and weekly COVID testing," ER-45-46 ¶¶ 47-52 (Heyser); terminated "for non-compliance to [sic] Defendant's COVID-19 mandate ON January 31, 2022," i.e., refusing to comply with "masking, social distancing, weekly testing", ER-46 ¶¶ 55-60 (Stein); or terminated for refusing to comply with the "weekly testing requirement" and sign a HIPAA form relating to that testing, ER-47 ¶¶ 63-66 (Zepeda).

Plaintiffs' allegations preclude them from pleading discriminatory intent or disparate treatment. *See, e.g., Wise v. Inslee*, 2022 U.S. Dist. LEXIS 76793, at *22 (E.D. Wa. Apr. 27, 2022) ("Plaintiffs have failed to allege facts that would support the prima facie elements for workplace discrimination because there is no indication that Plaintiffs faced adverse employment decisions due to their sincerely held religious beliefs rather than a failure to comply with the" vaccination

requirement), *appeal dismissed*, 2022 U.S. App. LEXIS 33053 (9th Cir. Oct. 7, 2022); *Somos v. Classic MS, LLC*, 2022 U.S. Dist. LEXIS 175260, at *6-7 (N.D. Oh. Sept. 27, 2022) ("Plaintiff also fails to establish a prima facie case as he fails to allege facts suggesting that he was replaced by a person outside the protected class or that he was treated differently than similarly situated non-protected employees").

This case is not similar to a recent non-precedential decision issued by the Court in *Keene v. City*, 2023 U.S. App. LEXIS 11807 (9th Cir. Apr. 18, 2013), which involved a motion for preliminary injunction (as opposed to a motion to dismiss, as in this case). Unlike the plaintiffs in *Keene*, Plaintiffs here never alleged or argued below that Raytheon failed to provide them with a reasonable accommodation of their religious beliefs under Title VII. ER-38-54. Plaintiffs still do not argue a failure to accommodate on appeal.

Nor could they because, unlike the plaintiffs in *Keene*, whose religious exemptions were denied (*see* 2023 U.S. App. LEXIS 11807, at *1), Raytheon **granted** Plaintiffs' exemption requests and permitted them to mask, test, and distance instead of receiving the vaccination. ER-44-47 ¶¶ 34-66. Indeed, the accommodation sought by the plaintiffs in *Keene* was essentially what Raytheon offered Plaintiffs here: the *Keene* plaintiffs wanted their employer to "accommodate them by requiring them to wear masks, test often, and wear PPE

…." Case No. 22-16567, Dkt. No. 7 at 3, 14; *see also* 2023 U.S. App. LEXIS 11807, at *2. Moreover, unlike *Keene*, there was no challenge in this case to the sincerity of a plaintiff's religious beliefs. *See* 2023 U.S. App. LEXIS 11807, at *5-6. Here, Plaintiffs' claims were dismissed due to inadequate pleading. Plaintiffs failed to identify which of them held religious beliefs that conflicted with the Policy or what those religious beliefs were. *See* ER-10-11.

At bottom, Plaintiffs' allegations fail because "it is evident that [they were] discharged, not because of [their] religious beliefs, but because [they] violated the company's … policy …." *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 605 (9th Cir. 2004) (cited in Br. 28) (affirming dismissal of disparate treatment claim). For multiple, independent reasons, any one of which was sufficient to defeat their claim, the District Court properly concluded that Plaintiffs had not pled, and could not plead, a claim for disparate treatment.

### B. Plaintiffs' Arguments Regarding Disparate Treatment Fail and Do Not Address the Deficiencies in Their Complaint.

On appeal, Plaintiffs do not attempt to defend their pleading below or even address any of the foregoing. The arguments they do raise are meritless.

Plaintiffs first argue that "[t]he District Court erred in its application of the term 'similarly situated'" because, according to Plaintiffs, the District Court should have compared them to vaccinated employees. Br. 26. Setting aside that Plaintiffs never made this argument below, and therefore waived it (*see* pg. 18, *supra*),

Plaintiffs are wrong. Under Title VII, "'similarly situated' means that employees must 'be similarly situated in all material respects.'" *Moran v. Selig*, 447 F.3d 748, 755 (9th Cir. 2006); *see also, e.g., Mitchell v. Toldeo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992) (similarly situated means "engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it"); *Redd v. STPNuclear Operating Co.*, 2014 U.S. Dist. LEXIS 164852, at *17 (S.D. Tex. Nov. 25, 2014) ("if the difference between the plaintiff's conduct and the alleged comparator's conduct is what caused the difference in treatment, then the employees are not similarly situated" (citing *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009)). For example, this Court held, in a case cited by Plaintiffs (Br. 28), that a plaintiff who hung up posters in the office was not similarly situated to other employees who hung up posters that contained different content. *Peterson*, 358 F.3d at 604-05.

Here, Plaintiffs were not treated differently than any other employees with respect to the Policy: as Plaintiffs' allegations make clear, the Policy applied to ***all*** Raytheon employees and any employee who wanted an exemption for a religious or non-religious reason had to request one, as Plaintiffs all did. *See* ER-41, 45 ¶¶ 18, 47; *see also, e.g., Somos*, 2022 U.S. Dist. LEXIS 175260, at *7 (plaintiff failed to allege "that he was treated differently than similarly situated non-

protected employees.  In fact, according to the complaint, Classic required all of its employees to complete the religious exemption form should they wish to seek an accommodation").

Because Plaintiffs were never vaccinated, however, they were not similarly situated to employees who were vaccinated.  As this Court explained in an authority cited by Plaintiffs (Br. 26), individuals are not similarly situated where the non-protected employees did not "engage[] in conduct similar to" the plaintiff's conduct.  *Bastidas v. Good Samaritan Hosp. LP*, 774 F. App'x 361, 364 (9th Cir. 2019); *see also Peterson*, 358 F.3d at 604-05.[23]  Here, the vaccinated employees did not engage in the same conduct as Plaintiffs because the vaccinated employees received the COVID-19 vaccine.  Plaintiffs did not receive the COVID-19 vaccine and specifically requested that Raytheon treat them differently than vaccinated employees by permitting Plaintiffs to not be vaccinated.

Accordingly, once they sought exemptions, the only group with whom Plaintiffs were similarly situated in all material respects, without differentiating or mitigating circumstances, were other Raytheon employees who were not vaccinated.  *See, e.g., Pollis v. New School for Social Research*, 913 F. Supp. 771, 780 (S.D.N.Y. 1995) ("Only those professors who were subject to the mandatory retirement policy ***and sought an exemption from it*** were similarly situated to"

---

[23] Plaintiffs cite to several inapplicable Pennsylvania state court cases (Br. 26) that did not involve Title VII.

plaintiff (emphasis added)). As to those employees, Plaintiffs affirmatively alleged that they were treated the same as employees who sought exemptions for non-religious reasons. ER-45 ¶ 47. Plaintiffs cannot state a claim under Title VII by comparing themselves to employees who never requested an exemption and were therefore not similarly situated.[24]

Plaintiffs also claim in conclusory fashion that they were "disciplined, disregarded, belittled, [and] verbally abused," and argue for the first time on appeal that they were prohibited from "us[ing] the gym, the cafeteria, travel, or attend[ing] meetings without" wearing a mask and distancing, or "participating in group projects, peer-building camaraderie, and most importantly opportunities for promotions and bonuses." Br. 26-28. Plaintiffs do not cite to the Complaint, presumably because *these allegations are not in the Complaint and were not before the District Court*. *See* ER-38-54.

The Complaint did not mention the gym, the cafeteria, the "Employee Rec Center," "group projects," "peer-building camaraderie," or "opportunities for promotions and bonuses." *See id.* The Court should not consider these unsupported allegations outside the record on appeal. *See Reina-Rodriguez*, 655

---

[24] Plaintiffs also cite to a purported statement by Raytheon's Chief Executive Officer (Br. 27), but never alleged such a statement below and did not advise the Court or Raytheon how to find a copy of this alleged statement. This statement is also irrelevant to Plaintiffs' claims. The Court should ignore it. *See Reina-Rodriguez*, 655 F.3d at 1193.

F.3d at 1193; *Alexander*, 817 F. App'x at 405. In the District Court, Plaintiffs asserted, without alleging any supporting facts, that Plaintiffs were "ostracized … during team meetings" and that some (but apparently not all) Plaintiffs were prevented from traveling or attending meetings. ER-48, 52-53 ¶¶ 75, 99. Plaintiffs did not allege, and do not assert on appeal, that other vaccine-exempt employees were treated differently with respect to travel or meeting attendance. *See* Br. 25. Plaintiffs' conclusory allegations below, and improper new allegations on appeal, are insufficient to state a claim.[25]

Similarly, Plaintiffs assert that "Raytheon also reserved the right to impose additional conditions upon exempted employees at any time." Br. 28. This allegation does not appear in the Complaint, ER-38-54, and was never raised below. Moreover, Plaintiffs nowhere allege, either in the Complaint or on appeal, that Raytheon imposed any conditions beyond masking, testing, and distancing. *See, e.g.,* ER-45 ¶ 47. This baseless new allegation should be rejected.

Plaintiffs also assert for the first time on appeal that "[s]everal Plaintiffs did not request a medical or religious exemption." Br. 28; *see also id.* 15 (claiming that Leake and Heyser did not receive exemptions). Again, Plaintiffs' statement directly contradicts their Complaint: as set forth above, each of the Plaintiffs

---

[25] Plaintiffs' claim that the COVID-19 vaccine is "now off-market" (Br. 27) is false and addressed above in connection with the FDA's April 18, 2023 statement, pg. 19, *supra*.

alleged below that they applied for, and received, an exemption.  *See* ER-44-47

¶¶ 34-66.  Plaintiffs cannot contradict their pleading in order to revive their claims

below.  *See, e.g., Hernandez v. Cty. Maricopa*, 792 F. App'x 551, 552 (9th Cir.

2020) (rejecting "argument on appeal" that was "[c]ontrary" to the complaint); *cf.*

*Reddy*, 912 F.2d at 296-97 ("It would not be possible for [plaintiff] to amend his

complaint to allege a completely new injury … without contradicting any of the

allegations of the original complaint").

Although not raised in connection with their disparate treatment claim

specifically, Plaintiffs assert elsewhere in their brief that masks and COVID-19

testing swabs are sterilized with a "carcinogenic" chemical and that OSHA has

made negative findings about the use of masks in the workplace.  Br. 43-44.  The

assertion regarding carcinogens is, at best, deeply misleading.[26]  As to the

purported "OSHA" findings, Plaintiffs cite in their appeal brief to studies (not

conducted by OSHA) showing that use of an *N95* mask, in conjunction with other

personal protective equipment ("PPE"), for an extended period can decrease

---

[26] *See* Abby Patkin, *Fact check: Masks won't give you lung cancer; some masks do include chemicals*, USA Today (Nov. 11, 2020), https://www.usatoday.com/story/news/factcheck/2020/11/11/fact-check-masks-dont-lead-lung-cancer-but-some-include-chemicals/6176080002/ (last visited June 12, 2023).

oxygen flow to the brain.[27]  Plaintiffs never alleged that Raytheon required them to wear N95 masks or mask while using other PPE, however.  ER-38-54.

In any event, these statements were never presented below and should be ignored and deemed waived for that reason.  *See Reina-Rodriguez*, 655 F.3d at 1193; *Alexander*, 817 F. App'x at 405.  They also contradict Plaintiffs' allegation below that they had no objections to masking and "voluntary" testing.  ER-42 ¶¶ 29-30.  The allegations further confirm Plaintiffs' admissions below that they had no religious objections to the safety conditions of their exemptions, but rather that their concerns were medical and secular in nature.  *See Friend*, 2023 U.S. Dist. LEXIS 83749, at *7-8 (non-religious objections cannot support Title VII claim).

At bottom, Plaintiffs here failed to plead facts suggesting that their "religion … played a role in the … termination decisions" or that Raytheon's decision was based "on discriminatory animus."  *Jones v. Rooms to Go*, 2020 U.S. Dist. LEXIS 117695, at *11-12 (S.D. Tex. July 6, 2020) (cited in Br. 26) (dismissing disparate treatment claim *with prejudice*).  Plaintiffs failed to plead that Raytheon "treated similarly situated employees differently."  *Id.* at *12.

---

[27] *See* Rahul Jitendra Vakharia, et al., *To Study Acute Changes in Brain Oxygenation on MRI in Healthcare Workers Using N95 Mask and PPE Kits for Six Hours a Day* (2021), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC8817801/; Hangyu Xu, et ano., *Effect of Chronic Hypoxia and Hypercapnia on Learning and Memory Function in Mice and the Expression of NY and CGRP in Brain* (2018), https://journals.sagepub.com/doi/10.1177/2058739218818956.

There was no "Hobbesian choice" here. Br. 50. This was not a case of "lose your faith and keep your job, or keep your faith and lose your job." *Keene*, 2023 U.S. App. LEXIS 11807, at *6 (internal quotation marks omitted). Raytheon provided Plaintiffs with an alternative that Plaintiffs conceded did not conflict with any Plaintiffs' alleged religious beliefs. The fact that Plaintiffs rejected that alternative for ***non-religious*** reasons, and wish to be completely unfettered by any COVID-19-related safety protocols, does not give rise to a claim under Title VII.

The District Court's decision should be affirmed.

## III. THE DISTRICT COURT PROPERLY DISMISSED PLAINTIFFS' TITLE VII HOSTILE WORK ENVIRONMENT CLAIM.

The District Court correctly dismissed Plaintiffs' Title VII claim for hostile work environment. ER-31-33. The District Court held that "Plaintiffs fail to show they were members of a protected class" and had not, in any event, met the "demanding standard" for a hostile work environment claim. ER-11. The District Court found that "Defendant had a blanket vaccination exemption and only required those employees with a vaccination exemption to wear masks and test weekly for COVID-19." ER-11 (citing ER-45). The District Court found Plaintiffs' allegation that requiring masking and testing created a hostile work environment "shocking" in light of the fact that COVID-19 "has claimed the lives of over one million Americans, and counting." ER-11-12.

The District Court further held that masking requirements "do[] not create a 'scarlet letter' effect because the employees could be vaccination-exempt for a multitude of reasons" other than religion, "or the masking employees could be vaccinated but simply want the added facial protection." ER-12. The District Court held that email reminders and signage regarding the Policy were "facially neutral" communications "visible to all Raytheon employees," which, "combined with the reasonable safety accommodations for vaccination-exempt employees, does not come close to meeting the demanding standard needed to state a legally valid hostile work environment claim." ER-12.

To establish a *prima facie* case for hostile work environment, a plaintiff must show that (1) he was subject to verbal or physical conduct based on his protected class, (2) the conduct was unwelcome, and (3) the conduct was sufficiently severe or pervasive to alter the conditions of his employment and create an abusive work environment. *Manatt v. Bank of America, NA*, 339 F.3d 792, 798 (9th Cir. 2003). The "standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a 'general civility code'…. [C]onduct must be 'extreme' to" constitute a hostile work environment. *Farragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).

Conduct not targeted to the plaintiff's protected status does not meet this standard. *See, e.g., Surrell v. Cal. Water Serv.*, 518 F.3d 1097, 1108-09 (9th Cir.

40

2008) (hostile work environment claim failed where the allegedly improper "comments were [not] based on" plaintiff's protected status); *Benton-Flores v. Santa Barbara Unified School District*, 2020 U.S. Dist. LEXIS 257960, at *7-9 (C.D. Cal. Sept. 21, 2020) (claim failed where the statements "do not target the recipient's" protected status and were "facially neutral"); *Ross v. Colorado DOT*, 2012 U.S. Dist. LEXIS 162591, at *20-31 (D. Colo. Nov. 14, 2012) (claim failed where, *inter alia*, "Plaintiff does not suggest, and there is no evidence, that anyone at CDOT ever disparaged Christianity generally or him personally because of his religious beliefs").

Applying these standards, Plaintiffs did not come close to stating a claim for hostile work environment, and could never state such a claim without contradicting their Complaint.

### A. Plaintiffs Failed to Allege Any "Hostile" Conduct, Let Alone the "Extreme" Conduct Required for a Hostile Work Environment Claim.

The District Court properly held that Plaintiffs failed to allege, and could not allege, the "extreme" conduct required for a hostile work environment claim here. ER-11-12. Raytheon required all of its employees to be vaccinated. ER-41 ¶ 18. Plaintiffs sought religious exemptions to that policy. Raytheon granted their requests, subject to their complying with reasonable health and safety conditions

that applied to both religious and non-religious objectors. *See* ER-44-47 ¶¶ 34-66. On its face, there is nothing "hostile" or "extreme" about this conduct.

Nor can Plaintiffs rely upon banal email and webpage notices and signage informing employees of the Policy (*see* ER-42, 52-53 ¶¶ 25-26, 99), since Plaintiffs' own allegations make clear that those communications were facially neutral, had nothing to do with Plaintiffs' religious beliefs, and were directed to Raytheon's entire workforce. Indeed, those communications were aimed at providing employees with adequate notice of Raytheon's policy and protecting health and safety. *See id.*

The District Court also properly found that masking, testing, and distancing do not function as a sort of "scarlet letter." ER-12. At least one other court has rejected the argument that a masking requirement in lieu of vaccination is equivalent to a "scarlet letter." In that case, the court found that defendant "has both medical and religious exemptions, and ***the same requirements are imposed on both groups***." *Klassen v. Trs. of Univ.*, 549 F. Supp. 3d 836, 890 (N.D. Ind. 2021) (emphasis added), *vacated as moot* , 24 F.4th 638 (7th Cir. 2022).[28] "Wearing masks thus doesn't signify to others that the individual religiously objects to the vaccination; they could fall within either exempted category, or they

---

[28] The appeal in *Klassen* was vacated as moot because the plaintiffs, like Plaintiffs here, received exemptions from a COVID-19-related policy or opted not to return to study at the defendant university. *See Klassen*, 24 F.4th at 639-40.

could be a vaccinated individual who chooses to take the extra (and unrequired) precaution to wear a mask." *Id.*

The same is true here. Again, it cannot be said enough: Plaintiffs themselves alleged below that **<u>both</u>** religious and medical objectors were subject to masking, testing, and distancing requirements, and they admitted that those conditions were reasonable. ER-43, 45, 47 ¶¶ 30, 47, 63. Plaintiffs were not singled out based on their religious status, nor is the conduct they described "hostile" or "extreme" as a matter of law. *See Surrell*, *Benton-Flores*, and *Ross*, *supra*. Accordingly, Plaintiffs failed to state a claim for hostile work environment.

### B. Plaintiffs' Arguments Regarding Hostile Work Environment Ignore the Complaint and the District Court's Decision.

On appeal, Plaintiffs do not address any of the foregoing. Their primary argument is that "Raytheon could not make th[e] assessment" that the "COVID-19 vaccines were safe and effective" when deciding to implement the Policy. Br. 23. As set forth above, Plaintiffs never made allegations regarding the safety and efficacy of the vaccine in the District Court, and cannot do so now. *See* pg. 18, *supra*. Although Raytheon had a reasonable basis for implementing the Policy, and an overwhelming number of courts across the country have declined to enjoin private employers' similar policies (*see* n.20, *supra*), whether the vaccine is safe and effective is, ultimately, irrelevant to the issues in this case.

As set forth above, Plaintiffs were exempt from the Policy, meaning that, by their own admission, they were not required to be vaccinated. Plaintiffs were terminated or resigned because of their refusal to abide by the health and safety conditions for Plaintiffs' exemptions from the Policy. Moreover, the question of whether the COVID-19 vaccine is safe and effective (it is),[29] does not change the fact that Plaintiffs failed to, and could not, allege any hostile conduct by Raytheon, let alone the "extreme" conduct required to support a hostile work environment claim.

Plaintiffs also assert that "the District Court totally ignored, without any explanation or basis, that Raytheon's monetary interests may have played a role in the implementation of the Policy. Plaintiffs allege that Defendant … had conflicts of interest in making the decision to mandate COVID-19 vaccines" based upon Raytheon's government contracts. Br. 23. Plaintiffs' assertion is an egregious misstatement. Setting aside the veracity of Plaintiffs' assertions, Plaintiffs never made an allegation about the amount of Raytheon's contracts or its purported "conflict of interest" below. ER-15-18, 38-54. The District Court obviously could not have "ignored" an allegation that Plaintiffs never made. Moreover, again, Raytheon's government contracts have no relevance to Plaintiffs' hostile work environment claim—even if there were any evidence that Raytheon enacted the

---

[29] *See* ns. 6, 11, *supra*.

Policy because of its government contracts, it does not mean that Plaintiffs were subjected to the "extreme" conduct required to allege a hostile work environment claim.

Plaintiffs are attempting to raise new allegations and arguments that were never before the District Court and are wholly irrelevant. Based upon the allegations in the Complaint, Plaintiffs did not, and could never, state a claim for hostile work environment.

## IV. THE DISTRICT COURT PROPERLY DISMISSED PLAINTIFFS' TITLE VII RETALIATION CLAIM.

The District Court properly held that Plaintiffs failed to, and could never, state a claim for retaliation under Title VII. ER-33-34. In considering this alleged theory of harm, the District Court again held that "Plaintiffs have not established that they were members of a protected class or were engaging in protected activity." ER-12. The District Court further held that even if Plaintiffs had done so, they did not "establish a causal link between [their] protected activity and any adverse employment action." ER-12. As the District Court held:

> Plaintiffs admit in their Complaint … [that] they were terminated or resigned due to their refusal to comply with the health and safety protocols for vaccination-exempt employees. Defendant's requirement that vaccination-exempt employees wear facial masks and engage in weekly COVID-19 testing does not have any religious aspect attached to it and is a facially neutral policy. Plaintiffs' religious and, in some cases, medical objections to the COVID-19 vaccine was not a but-for

45

> cause of Plaintiffs' termination.  Instead, the but-for
> cause of Plaintiffs' termination was Plaintiffs' refusal to
> comply with the safety conditions for vaccination exempt
> employees.

ER-12-13.  Accordingly, the District Court dismissed Plaintiffs' retaliation claim.

ER-13.

A claim for retaliation under Title VII requires a plaintiff to show that "(1) she engaged in activity protected under Title VII, (2) the employer subjected her to an adverse employment decision, and (3) there was a causal link between the protected activity and the employer's action."  *Passantino v. Johnson & Johnson Consumer Prods.*, 212 F.3d 493, 506 (9th Cir. 2000).  Where a plaintiff fails to establish a causal link, the claim fails.  *Wise*, 2022 U.S. Dist. LEXIS 76793, at *22 (Title VII claim fails where plaintiff does not allege that adverse employment decisions were "due to their sincerely held religious beliefs rather than a failure to comply with" vaccination requirements); *Together Employees*, 573 F. Supp. 3d at 444 (no likelihood of success on retaliation claim where vaccine objectors "likely cannot show a causal connection between the protected activity and the adverse employment action").

Measured against this standard, Plaintiffs claim for retaliation fails.

46

### A.    Plaintiffs Could Not Plead The Causal Link Required For a Retaliation Claim.

Here, as set forth above in connection with the disparate treatment claim, the District Court properly held that Plaintiffs could not establish any causal link between their requests for exemptions and their loss of employment.  ER-12-13. Plaintiffs did not, and, based on the allegations in the Complaint, could not, allege that they were terminated or forced to resign because they applied for a religious exemption.  ER-44-47 ¶¶ 34-66.  To the contrary, Plaintiffs alleged that Raytheon **_granted_** their exemptions and Plaintiffs suffered adverse employment actions only because they refused to comply with the health and safety conditions of those exemptions, to which Plaintiffs admittedly had no religious objections.  *See id.* There is no causal link between the ostensible protected activity—seeking a religious exemption—and the alleged adverse employment actions.

"Title VII … is not an insurance policy [or] a license to fl[out] company rules."  *Buchanan v. Genetech, Inc.*, 2010 U.S. Dist. LEXIS 90061, at *28 (N.D. Cal. Aug. 31, 2010) (dismissing retaliation claim) (quoting *O'Day v. McDonnell Douglas Helicopter Co.*, 79 F.3d 756, 763-64 (9th Cir. 1996)).  Under the circumstances here, Plaintiffs could not allege facts sufficient to demonstrate a causal link between the adverse employment actions and Plaintiffs' alleged religious beliefs or seeking of religious exemptions.  Plaintiffs' retaliation claim fails as a matter of law.

**B.      Plaintiffs' Arguments Regarding Retaliation Do Not Address the Lack of Causal Connection.**

On appeal, Plaintiffs do not address their failure to allege a causal connection between their alleged religious beliefs and the terminations or resignations. *See* Br. 30-31. Plaintiffs rely solely on their repeated arguments regarding the efficacy and safety of the vaccine and Executive Order 14042, which were not raised below, were therefore waived, are wrong, and are irrelevant. *See* pg. 18, *supra*. Again, courts across the country have repeatedly and consistently declined to enjoin private employers' COVID-19 vaccination requirements at almost every turn. *See* n.20, *supra*. Plaintiffs may disagree with vaccination, masking, testing, and distancing, but that does not mean they were retaliated against based upon their religious beliefs. *Cf. Peterson*, 358 F.3d at 605 ("it is evident that [they were] discharged, not because of [their] religious beliefs, but because [they] violated the company's policy").

The District Court properly held that Plaintiffs had not stated, and could not state, a claim for retaliation under Title VII.

**V.     THE DISTRICT COURT PROPERLY DISMISSED THE COMPLAINT WITH PREJUDICE.**

Plaintiffs do not address the District Court's decision to dismiss the Complaint with prejudice, as opposed to without prejudice, and may not do so for the first time on reply. *See Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999)

("arguments not raised by a party in its opening brief are deemed waived").

Raytheon briefly addresses that issue out of an abundance of caution, however.

In the District Court, Plaintiffs never sought leave to amend, and never proposed any amendments that could cure their deficient pleading. Nor could they have done so because Plaintiffs cannot contradict the factual basis of their original pleading. *Reddy*, 912 F.2d at 296-97 (affirming district court's denial of leave to amend as futile because "[i]t would not be possible … to amend … without contradicting … his original complaint"); *Leavitt v. Wells Fargo Bank, N.A.*, 2009 U.S. Dist. LEXIS 38258, at *8-9 (D. Az. May 1, 2009) ("Because Plaintiff could not cure the deficiencies in his Complaint and remain consistent, the Court will not grant Plaintiff leave to amend").

Here, there was no set of facts under which Plaintiffs could allege the *prima facie* elements of their Title VII claims without contradicting both the Complaint and the facts they had already alleged. Plaintiffs could not walk back, for example, their allegations that Plaintiffs were not treated differently than non-religious objectors; that they objected to the vaccine, masking, and testing for various non-religious reasons; and that they did not suffer adverse employment action because of their religious beliefs. As a result, any amendment would have been futile. The District Court properly dismissed the Complaint with prejudice.

## VI. PLAINTIFFS' NEW ARGUMENTS REGARDING DUE PROCESS AND EQUAL PROTECTION ARE IMPROPER AND IRRELEVANT.

Plaintiffs devote most of their appeal brief to constitutional arguments relating to Due Process, Equal Protection, and the Supreme Court's decision in *Jacobson v. Massachusetts*, 197 U.S. 11 (1905). *See* Br. 32-51. These arguments should be rejected for at least three reasons. First, Plaintiffs never raised these arguments below. Second, and relatedly, Plaintiffs did not assert any causes of action under the Constitution or 42 U.S.C. § 1983 below. Third, Plaintiffs could not have asserted constitutional claims against Raytheon because it is a private actor. Plaintiffs' arguments are frivolous, were waived, and should be rejected.

### A. Plaintiffs Never Raised Constitutional Arguments Below.

Plaintiffs never advanced any Constitutional arguments or cited to *Jacobson*, the Due Process Clause, or the Equal Protection Clause in the District Court. *See* ER-15-18, 38-54. "As a general rule, we will not consider arguments that are raised for the first time on appeal." *Smith*, 194 F.3d at 1052; *see also Alexander*, 817 F. App'x at 405. In addition to being irrelevant, Plaintiffs waived these arguments. There is no reason for this Court to consider these arguments.

### B. Plaintiffs Never Asserted Any Constitutional Causes of Action.

Relatedly, Plaintiffs did not assert any constitutional claims, either directly or under 42 U.S.C. § 1983, in the District Court. *See* ER-38-54. They only asserted claims under Title VII. *See id.* Thus, Plaintiffs' statements that "the

District Court … misread the substance of Plaintiffs' Due Process Claims" or "erred in its analysis of employees' equal protection claims" (Br. 40, 46) are blatantly false. The District Court obviously could not have "misread," "analy[zed]," or dismissed causes of action that Plaintiffs never brought. The only issues relevant on appeal relate to Title VII, as Plaintiffs only brought Title VII claims and the District Court only dismissed Title VII claims. Accordingly, the Court should not address any arguments unrelated to Title VII.

### C. Plaintiffs Could Not Have Asserted Constitutional Claims Against Raytheon Because it is a Private Actor.

In addition to the fact that Plaintiffs never asserted constitutional claims below, Plaintiffs could not have asserted any such claims because Raytheon is not a government actor.

### 1. Constitutional Claims Can Only Be Asserted Against State Actors.

Constitutional claims cannot be asserted against private actors like Raytheon, but only against government actors. *See Manhattan Cmty. Access Corp. v. Halleck,* 139 S. Ct. 1921, 1926 (2019) (the U.S. Constitution "constrains governmental actors and protects private actors …. [A] private actor, not a state actor … therefore is not subject to" constitutional claims); *Isaacs v. USC Keck Sch. of Med.*, 853 F. App'x 114, 117 (9th Cir. 2021) ("The First and Fourteenth Amendments … do not apply to private actors unless those actors are exercising a

function 'traditionally exclusively reserved to the State'"); *Legal Servs. v. Arnett*, 114 F.3d 135, 138 (9th Cir. 1997) ("Section 1983 provides a cause of action against a ***State actor***" (emphasis added)); *Jordan v. Verizon New England, Inc.*, 180 F. App'x 183, 184 (1st Cir. 2006) ("the alleged constitutional violations are, to quote the district court, 'curious claims, given the fact that his former employer is a private, rather than governmental, entity'"); *McGee v. Allstate Ins. Co.*, 2011 U.S. Dist. LEXIS 89081, at *18 (E.D.N.Y. Aug. 3, 2011) ("The Fourteenth Amendment applies only to *state* actors. It cannot be applied to Allstate, indisputably a private actor").

Plaintiffs' own cited authorities confirm this: almost every one involves claims against a governmental entity. *See, e.g., Jacobson*, 197 U.S. at 12 (state of Massachusetts); *Washington v. Glucksberg*, 521 U.S. 702 (1997) (state of Washington); *Cruzan v. Director, Missouri Department of Health*, 497 U.S. 261 (1990) (Missouri Department of Health); *Washington v. Harper*, 494 U.S. 210 (1990) (state of Washington); *Youngberg v. Romeo*, 457 U.S. 307 (1982) (Pennsylvania government officials and entities); *Ingraham v. Wright*, 430 U.S. 651 (1977) (Florida government officials and entities).[30]

---

[30] *See also Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63 (2020) (New York governor); *Calvary Chapel Dayton Valley v. Sisolak*, 140 S. Ct. 2603 (2020) (Nebraska governor and state officials); *Koontz v. St. Johns River Water Management District*, 570 U.S. 595 (2013) (Florida water management district); *Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*, 547 U.S. 47 (2006)

Here, there cannot be any dispute that Raytheon is ***not*** a government actor.

Plaintiffs never alleged or argued below that Raytheon was somehow a

government actor and they cannot do so for the first time on appeal. *See* ER-15-

18, 38-54; *Smith*, 194 F.3d at 1052; *Alexander*, 817 F. App'x at 405. Moreover, as

set forth above in the Corporate Disclosure Statement, Raytheon is a publicly-

traded company, not a governmental entity.[31] At least one federal court has held

that constitutional claims against Raytheon and one of its subsidiaries, Collins

Aerospace, failed "for lack of state action" because the "policy was implemented

---

(U.S. Secretary of Defense and other government officials); *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000) (Illinois local government); *Burson v. Freeman*, 504 U.S. 191 (1992) (Tennessee government officials); *Rutan v. Republican Party*, 497 U.S. 62 (1990) (Illinois state and political party officials); *Regan v. Taxation with Representation*, 461 U.S. 540 (1983) (U.S. Treasury Secretary and other government officials); *Memorial Hospital v. Maricopa County*, 415 U.S. 250 (1974) (Arizona county); *Perry v. Sindermann*, 408 U.S. 593 (1972) (Texas public college officials); *Phillips v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2008) (Pennsylvania local government entities and officials); *Hill v. Borough of Kutztown*, 455 F.3d 225 (3d Cir. 2006) (Pennsylvania local government and mayor); *DeMuria v. Hawkes*, 328 F.3d 704 (2d Cir. 2003) (Connecticut police officer); *White v. Napoleon*, 897 F.2d 103 (3d Cir. 1990) (New Jersey prison doctor); *Rennie v. Klein*, 653 F.2d 836 (3d Cir. 1981) *vacated and remanded*, 458 U.S. 1119 (1982) (New Jersey government officials and entities); *Halgren v. City of Naperville*, 577 F. Supp. 3d 700 (N.D. Ill. Dec. 19, 2021) (Illinois local government); *see also Halgren*, 577 F. Supp. 3d at 719 n.43 (reserving decision on private hospital's motion to dismiss on the ground that it was not state actor).

[31] *See also, e.g.,* Raytheon Technologies Corporation, Form 10-K for the Fiscal Year Ended December 31, 2022, *available at* https://www.sec.gov/ix?doc=/Archives/edgar/data/101829/000010182923000009/rtx-20221231.htm (last visited June 12, 2023). The Court can take judicial notice of SEC filings. *See, e.g., Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1064 n.7 (9th Cir. 2008) ("SEC filings subject to judicial notice").

by Collins Aerospace and not a state actor." *Freeman v. Raytheon Techs. Corp.*,

2023 U.S. Dist. LEXIS 73223, at \*17-18 (D. Colo. Mar. 24, 2023), *appeal filed*,

Case No. 23-1133 (10th Cir. Apr. 25, 2023). Raytheon is not a government entity;

it is a private company.

### 2. Raytheon Was Not Exercising Traditional Government Powers.

Private companies can only be subjected to constitutional claims where they

are "exercising a function 'traditionally exclusively reserved to the State.'" *Isaacs*,

853 F. App'x at 117. Here, Raytheon clearly does not exercise traditional

government powers.

Plaintiffs' cited authority involving a suit against individuals employed by a

private company, *Leaphart v. Prison Health Services, Inc.*, 2010 WL 5391315

(M.D. Pa. Nov. 22, 2010), underscores this Court's holding in *Isaacs*. In *Leaphart*,

a prison inmate sued doctors who treated him in prison, and one of the defendant

doctors argued that he was not a state actor because he was employed by a private

company contracted by the Pennsylvania prison. 2010 WL 5391315, at \*9-11.

The court held that, at the pleading stage, the doctor was a state actor because he

"voluntarily undert[ook] health care for inmates with the duty to discharge ***the***

***state's constitutional obligations*** as to those inmates," and thus "the relationship

between the prisoner, the state and the doctor was sufficiently intertwined" to find

that the doctor was a state actor. *Id.* (emphasis added).

54

Here, Plaintiffs do not assert that Raytheon was exercising any state powers. Merely being a government contractor (Br. 17, 24, 41) is not enough. Acts of "private contractors do not become acts of the government by reason of their significant or even total engagement in performing public contracts." *Rendell-Baker v. Kohn,* 457 U.S. 830, 841 (1982).

### 3. Raytheon's Employment Decisions Were Not State Actions.

Even if Plaintiffs could somehow establish, for the first time on appeal and against all of the evidence and legal authority to the contrary, that Raytheon is, effectively, a government actor by virtue of its contracting work, Plaintiffs *still* could not assert any constitutional claims against Raytheon here because they are not bringing suit based on Raytheon's contracting work. Where "[t]he issue" relates to an employer's conduct "in terminating [Plaintiff's] employment, *not* whether its providing [other] services [to the government] was state action," a plaintiff cannot assert constitutional claims against the employer. *See Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 550-51 (5th Cir. 2005).

Even if Raytheon's government contracts rendered it a state actor in some contexts (though they do not), Raytheon was not acting as a state actor when it terminated those Plaintiffs who were fired. Plaintiffs did not allege, and could not

allege, that the federal government "exerted coercive power or provided significant encouragement for [Raytheon's] decision to terminate [Plaintiffs'] employment." *See id.* at 551.

This case is not like *Leaphart*, where the plaintiff was a prison inmate who sued based on medical treatment he received from doctors contracted by the state to provide medical care to prisoners. *See Leaphart*, 2010 WL 5391315, at *9-11. As Plaintiffs themselves admit, they chose to resign or were fired by Raytheon; there is no allegation that the federal government played any role in those employment decisions and Raytheon was not fulfilling a power traditionally exercised by the government, or a duty owed by the government, when it terminated those Plaintiffs who did not resign. *See* ER-44-47 ¶¶ 34-66.

At bottom, Plaintiffs' lengthy constitutional arguments are a red herring. This case has nothing to do with *Jacobson* or constitutional rights. Raytheon, as a private employer, had the right to adopt the Policy, as courts have found of private employers in similar circumstances across the country.[32] Raytheon undisputedly provided Plaintiffs with reasonable accommodations based upon their purported religious beliefs, granting them exemptions with certain safety conditions as an alternative to vaccination. Plaintiffs refused to accept those conditions for purely secular reasons. Plaintiffs' personal objections to vaccination, masking, testing,

---

[32] *See* n.20, *supra*.

and distancing do not give rise to any colorable legal claim against Raytheon. The Court should ignore their improper, and waived, constitutional arguments.

## CONCLUSION

For the foregoing reasons, Raytheon respectfully requests that the District Court's decision be affirmed.

## STATEMENT REGARDING ORAL ARGUMENT

Raytheon respectfully submits that oral argument is not warranted in this appeal.

Dated: June 14, 2023

Respectfully submitted,

SEYFARTH SHAW LLP

By: */s/ Owen R. Wolfe*
   Owen R. Wolfe

Esteban Shardonofsky
sshardonofsky@seyfarth.com
700 Milam Street, Suite 1400
Houston, Texas 77002-2797
Telephone:   (713) 225-2300
Facsimile:   (713) 225-2340

Dawn R. Solowey
dsolowey@seyfarth.com
Seaport East, Suite 1200
Two Seaport Lane
Boston, Massachusetts 02210
Telephone:   (617) 946-4985
Facsimile:   (617) 439-3675

Owen R. Wolfe
owolfe@seyfarth.com
620 Eighth Avenue
New York, New York 10018
Telephone:   (212) 218-5500
Facsimile:   (212) 218-5526

*Attorneys for Defendant-Appellee*

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Rule 32(a) and (g) of the Federal Rules of Appellate Procedure, the foregoing brief is in 14-Point Times New Roman proportional font and contains 13,257 words, excluding the parts of the brief exempted by Rule 32(f), and thus is in compliance with the requirements of Local Rule 32-1(a), which provides that principal briefs may not exceed 14,000 words.

Dated:  June 14, 2022

By:   */s/ Owen R. Wolfe*
          Owen R. Wolfe