**No.: 23-15320 D.C.**
𝔍𝔫 𝔗𝔥𝔢
# United States Court of Appeals For The Ninth Circuit

**LISA LEAKE, KRISTEN GRACE, JOSEPH HEYSER, CHRISTOPHER STEIN, AND LESLIE ZEPEDA, AND ON BEHALF OF ALL OTHER SIMILARLY SITUATED,**

*Appellants,*

v.

**RAYTHEON TECHNOLOGIES, INC.**

*Appellees,*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF ARIZONA**

_____

## REPLY BRIEF
_____

**Appeal from No.: 4:22-cv-00436-RM**

Nancy Knox Bierman
Libra Law Texas
204 Munford St.
Houston, TX 77002
(713) 836-9990

*Counsel for Appellants*

TABLE OF CONTENTS

                                                                           **Page**

Table of Contents …………………………………………….2

Table of Authorities ……………………..………………3

Summary of Rebuttal Argument ……………………..……5

Rebuttal Argument …………………………………………...6

    I.    The Standard Required to Prove Retaliation Has Been Met by The Appellant/Plaintiffs………….6

    II.    The Standard Required to Prove Harassment Has Been Met by Appellant/Plaintiffs.……………9

    III.    The Standard Required to Prove Discrimination Has Been Met by Appellant/Plaintiffs…………10

    IV.    The Standard Required to Prove Wrongful Termination Has Been Met by Appellant/Plaintiffs……….11

    V.    In The Time of Chimpanzees, I was a Monkey, or Counsel for Appellant/Plaintiffs is Just Wrong, According to Defendant……..…13

Conclusion ……………………………..……………16

Proof of Service……………………………………….17

Certification of Compliance……………….....................18

# TABLE OF AUTHORITIES

*Adetuyi v. City & County of San Francisco, 63 F. Supp. 3d 1073, 1089 (N.D. Cal. 2014)…5,8*

*Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742. 761 (1998)..10

*Cf. Peterson v. Hewlett-Packard Co., 358 F.3d 599, 603 (9th Cir. 2004)..8,9*

*Chuang v Univ. of Cal. Davis, Bd. of Trs., 225 F.3d 1115,1123 (9th Cir. 2000)…6,7*

*Day v.Sears Holdings Corp.*, 930 F. Supp. 2d 1146, 1176 (C.D. Cal. 2013)…6, 7

*Dep't of Fair Emp. & Hous. v. Lucent Techs., Inc., 642 F.3d 728, 748 (9th Cir. 2011)..11*

*Dominguez-Curry v. Nev. Transp. Dep't*, 424 F.3d 1027, 1037 (9th Cir. 2005)….6

*Groff v. DeJoy, (2023) U.S. LEXIS 2790, 15-16………5*

*Hittle v. City of Stockton, 2022 WL 616722, at *5 (E.D. Cal. Mar. 2, 2022)……5,6*

*Little v. Windermere Relocation, Inc.,301 F.3d 958, 970 (9th Cir. 2002)…8*

*McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)……6,7*

*Missouri v. Biden*, (W.D. La. 2023)…………..13

*Passantino v. Johnson & Johnson Consumer Prods., Inc., 212 F.3d 493, 506 (9th Cir. 2000)….6,7,9*

*Ray v. Henderson, 217 F.3d 1234, 1240 (9th Cir. 2000).....6*

*Silo v. CHW Med. Found., 45 P.3d 1162, 1166 (Cal. 2002)..11*

*Univ. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 360 (2013)..8*

*Vance v. Ball State Univ.*, 133 S. Ct. 2434, 2443 (2013)..10

*Yartzoff v. Thomas, 809 F.2d 1371, 1376 (9th Cir. 1987)…8*

*Weil v. Citizens Telecom Servs. Co.*, 922 F.3d 993, 1002 (9th Cir. 2019)…5,6

Rare link between coronavirus vaccines and Long Covid–like illness starts to gain acceptance | Science | AAAS…………….12

Announcement New ICD 10 code for coronavirus 2 20 2020 (cdc.gov)……..13

Frequently Asked Questions Regarding ICD-10-CM Coding for COVID-19 | AHA…..13

Coronavirus Update: CMS Releases Guidance Implementing CARES Act Provisions | AHA…..13

Vital Statistics Reference Guidance Number 03, February 2023 (cdc.gov)…….13

CNN staffer tells Project Veritas network played up COVID-19 death toll for ratings (nypost.com)………14

Fact check: Medicare pays hospitals more money for COVID-19 patients (usatoday.com)..14

President Joe Biden has a message for unvaccinated Americans | CNN Politics…….15

Matt Orfalea on Twitter: ""NOBODY IS SAFE!" #COVID19 https://t.co/GeRfWm8jce" / Twitter…….15

## SUMMARY OF REBUTTAL ARGUMENT

Since its passage, Title VII of the Civil Rights Act of 1964 has made it unlawful for covered employers "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges [of] employment, because of such individual's . . . religion." 42 U. S. C. §2000e-2(a)(1) (1964 ed.). As originally enacted, Title VII did not spell out what it meant by discrimination "because of . . . religion," The EEOC defined this as "to make reasonable accommodations to the religious needs of employees" whenever that would not work an "undue hardship on the conduct of the employer's business." 29 CFR § 1605.1 (1968).*Groff v. DeJoy, 2023 U.S. LEXIS 2790, \*15-16.* Title VII requires that an employer reasonably accommodate an employee's practice of religion, not merely that it assess the reasonableness of a particular possible accommodation or accommodations. *Adeyeye v. Heartland Sweeteners, LLC*, 721 F.3d 444 (7th Cir. 2013) Congress provided that "[t]he term 'religion' includes all aspects of religious observance and practice, as well as belief….without undue hardship on the conduct of the employer's business." 42 U. S. C. §2000e(j) (1970 ed., Supp. II). *DeJoy* at 16.

# REBUTTAL ARGUMENT

I. THE STANDARD REQUIRED TO PROVE RETALIATION HAS BEEN MET BY APPELLANT/PLAINTIFFS

Plaintiffs assert claims for Retaliation under Title VII of the Civil Rights Act of 1964. Title VII prohibits an employer from discriminating against an employee on the basis of a protected trait including religion. See 42 U.S.C. § 2000e-2(a)(1); The statute prohibits an employer from retaliating against an employee because they have made a charge of discrimination or has opposed a discriminatory practice. See 42 U.S.C. § 2000e-3(a); In the Ninth Circuit, courts utilize a burden-shifting framework when reviewing these claims. *Weil v. Citizens Telecom Servs. Co.*, 922 F.3d 993, 1002 (9th Cir. 2019) (citing *McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)*). To make a prima facie case of retaliation, a plaintiff must show that "(1) they engaged in a protected activity; (2) the employer subjected them to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse action." *Ray v. Henderson, 217 F.3d 1234, 1240 (9th Cir. 2000)*; see *Day v. Sears Holdings Corp.*, 930 F. Supp. 2d 1146, 1176 (C.D. Cal. 2013). If established, the prima facie case creates a rebuttable presumption of unlawful discrimination. *Weil*, 922 F.3d at 1002. The burden of production, but not persuasion, then shifts to the defendant to articulate a "legitimate, nondiscriminatory reason" for its action. *Id.* (quoting *McDonnell Douglas*, 411 U.S. at 802); see *Chuang v. Univ. of Cal. Davis, Bd. of Trs., 225*

F.3d 1115, 1123 (9th Cir. 2000). Whether a defendant has met its burden involves "no credibility assessment" at this stage. *Hittle v. City of Stockton, 2022 WL 616722, at *5 (E.D. Cal. Mar. 2, 2022)* (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993)); If the defendant meets this burden, the presumption of discrimination disappears. *St. Mary's Honor Ctr.,* 509 U.S. at 507; Plaintiff must then produce "sufficient evidence to raise a genuine issue of material fact as to whether the employer's proffered nondiscriminatory reason is merely a pretext for discrimination." *Dominguez-Curry v. Nev. Transp. Dep't*, 424 F.3d 1027, 1037 (9th Cir. 2005). In employment discrimination cases, the plaintiff "need produce very little evidence to overcome an employer's motion for summary judgment . . . because the ultimate question is one that can only be resolved through a searching inquiry—one that is most appropriately conducted by a factfinder, upon a full record." *Chuang,* 225 F.3d at 1124.

Plaintiffs have established a prima facie case of retaliation. First, Plaintiff engaged in protected activity when they requested religious exemptions to the mandate. Free Exercise of Religion being a protected activity under Title VII, *Passantino v. Johnson & Johnson Consumer Prods., Inc., 212 F.3d 493, 506 (9th Cir. 2000);* as is a complaint regarding a new policy. *Day,* at 1176 ("filing an administrative complaint or grievance" and "making informal complaints to supervisors" are

7 | Page

protected activities). Second, Plaintiffs suffered an adverse employment action as they were terminated after voicing their complaints. *Little v. Windermere Relocation, Inc., 301 F.3d 958, 970 (9th Cir. 2002*) ("[O]of course, termination of employment is an adverse employment action[.]"). Finally, Plaintiffs argue that the casual link between the protected activity and the adverse employment action is "unusually clear". The Ninth Circuit held "causation may be established based on the timing of the relevant actions." *Passantino* at 507. "Specifically, when adverse employment decisions are taken within a reasonable period of time after complaints of discrimination have been made, retaliatory intent may be inferred*." Id.:* see also *Yartzoff v. Thomas, 809 F.2d 1371, 1376 (9th Cir. 1987)* ("This inference of a causal link is strengthened by the closeness in time between particular events."). "It is easier to find a causal connection when the alleged adverse employment action closely follows the protected conduct." *Adetuyi v. City & County of San Francisco, 63 F. Supp. 3d 1073, 1089 (N.D. Cal. 2014).*

Plaintiffs protected activity was the but-for cause of termination. *Univ. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 360 (2013)* ("Title VII retaliation claims must be proved according to traditional principles of but-for causation . . . ."). Defendant's allegedly unlawful retaliation would

not have occurred without Plaintiff's protected activity. *Id.* This Plaintiffs would all still be happily employed at Raytheon, but for the enforcement of the vaccine mandate. Moreover, the Ninth Circuit has held that "evidence based on timing can be sufficient to let the issue go to the jury, even in the face of alternative reasons proffered by the defendant." *Passantino*, 212 F.3d at 507. Plaintiffs request that the Court look at the events through the lens of reality, not conjecture, and see the chain of events for what they truly were, a loyalty test that has zero to do with public health.

II. THE STANDARD REQUIRED TO PROVE HARASSMENT HAS BEEN MET BY APPELLANT/PLAINTIFFS

Plaintiffs assert harassment claims for disparate treatment under Title VII. *Cf. Peterson v. Hewlett-Packard Co., 358 F.3d 599, 603 (9th Cir. 2004)* ("A claim for religious discrimination under Title VII can be asserted under several different theories, including disparate treatment and failure to accommodate.").. Religious harassment in violation of Title VII occurs when employees are: (1) required or coerced to abandon, alter, or adopt a religious practice as a condition of employment; or (2) subjected to unwelcome statements or conduct that is based on religion and is so severe or pervasive that the individual being harassed reasonably finds the work environment to be hostile or abusive, and there is a basis for holding

the agency liable. Liability attaches when a tangible employment action results from said discrimination when it creates a hostile work environment, and reasonable care has not been taken to prevent or correct the behavior.

The Supreme Court defined "tangible employment action" in *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742. 761 (1998), stating, "A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Vance v. Ball State Univ.*, 133 S. Ct. 2434, 2443 (2013) Here not only did the Defendant fail to prevent harassing behavior, they literally encouraged it by delineating two distinct cohorts: the vaccinated and the unvaccinated and made membership in one group (vaccinated) the preferred group, while then un-vaccinated were treated as "the unclean".

### III. STANDARD REQUIRED TO PROVE DISCRIMINATION HAS BEEN MET BY APPELLANT/PLAINTIFFS

Plaintiffs assert claims for discrimination on the basis of religion under Title VII. Plaintiffs claim they were excluded from travel, the gym, team meetings, and common employee areas. They were forced to mask and submit to weekly nasal swab testing, natural immunity was ignored, as were requests for alternative test modalities. They were ostracized,

humiliated, and ultimately terminated due to their sincerely held religious beliefs. Defendant demonstrated discriminatory animus toward Plaintiffs by terminating their employment and showing callous indifference toward their sincerely held religious beliefs. Defendant maintains that it did not discriminate against Plaintiffs on the basis of his religion because they excluded all unvaccinated employees from the areas mentioned above as well as imposed the same masking/testing requirement, failing to see that the same requirements were NOT imposed on the vaccinated, despite the inability of vaccination to stop transmission.

IV. THE STANDARD REQUIRED TO PROVE WRONGFUL TERMINATION HAS BEEN MET BY APPELLANT/PLAINTIFFS

Plaintiffs claim wrongful termination in violation of Title VII. The Court has held that "there can be no right to terminate for an unlawful reason or a purpose that contravenes fundamental public policy." *Dep't of Fair Emp. & Hous. v. Lucent Techs., Inc., 642 F.3d 728, 748 (9th Cir. 2011)* (quoting *Silo v. CHW Med. Found., 45 P.3d 1162, 1166 (Cal. 2002)*). There must also be a nexus between the public policy and an employee's termination." *Lucent Techs., Inc., 642 F.3d at 749*. Here, Plaintiffs were terminated for refusal to betray their strongly held religious

beliefs and inject an experimental vaccination derived from aborted fetal tissue that may have had harmful effects on their health. [Rare link between coronavirus vaccines and Long Covid–like illness starts to gain acceptance | Science | AAAS](#)

## In contention

At least six COVID-19 vaccine candidates use cells from fetuses aborted decades ago.

| DEVELOPER | VACCINE TYPE | FETAL CELLS USED | HUMAN TRIALS | POTENTIAL U.S. FUNDING | WARP SPEED PICK |
|---|---|---|---|---|---|
| CanSino Biologics, Inc./Beijing Institute of Biotechnology | Replication-deficient adenovirus | HEK-293 | Yes (phase II) | No | No |
| University of Oxford/AstraZeneca | Replication-deficient adenovirus | HEK-293 | Yes (phase II/III) | $1.2 billion | Yes (short list) |
| Janssen Research & Development USA | Replication-deficient adenovirus | PER.C6 | No | $456 million | Yes (short list) |
| University of Pittsburgh | Protein subunit | HEK-293 | No | No | No |
| ImmunityBio/NantKwest | Replication-deficient adenovirus | HEK-293 or derivative E.C7 | No | No | Yes (long list) |
| altimmune | Replication-deficient adenovirus | PER.C6 | Expected this month | No | No |

V.     IN THE TIME OF CHIMPANZEES, I WAS A MONKEY OR COUNSEL FOR APPELLANT/PLAINTIFFS IS JUST WRONG, ACCORDING TO DEFENDANT

When granting relief to Plaintiffs in *Missouri v. Biden*, (W.D. La. 2023 at 154), The Court found that "Plaintiffs are likely to succeed on the merits in establishing that the Government has used its power to silence the opposition. Opposition to Covid 19 vaccines; opposition to Covid19 masking and lockdowns; opposition to the lab-leak theory of Covid 19; ……and opposition to policies of the government officials in power. All were suppressed." The Court elaborated, stating that "During the pandemic, a period perhaps best characterized by widespread doubt and uncertainty, the United States Government seems to have assumed a role similar to an Orwellian "Ministry of Truth." *Ibid* at 154.

Not to be outdone by the governmental/media collusion, the regulatory agencies decided to have their own "glory day in the hot sun", The CDC engaged in an unscheduled medical coding update (ICM 4/20/20-PIC Code created), aggregating Pneumonia, Influenza and Covid, thus inflating morbidity and mortality statistics and allowing for seasonal flu to "disappear"

## Table 5: COVID-19 Treatment Diagnosis Codes

| Common Patient Diagnosis | Prior to April 1, 2020 | After April 1, 2020 |
|---|---|---|
| Pneumonia | J12.89, B97.29 | U07.1, J12.89 |
| Lower respiratory infection/acute respiratory infection | J22, B97.29 | U07.1, J22 |
| Respiratory infection | J98.8, B97.29 | U07.1, J98.8 |
| Acute respiratory distress syndrome | J80, B97.29 | U07.1, J80 |
| Acute bronchitis | J20.8, B97.29 | U07.1, J20.8 |
| Bronchitis not otherwise specified | J40, B97.29 | U07.1, J40 |

It also allowed for PCR Tests, never designed to diagnose viruses, to be "over-magnified" above recommended cycle thresholds, CDC: maximum 28 CT for post-vaccine COVID PCR tests - The Sentinel (sentinelksmo.org) Ct_Fact_Sheet.pdf (tn.gov), to allow for "positive" tests, adding to "case count calculators, for a "scary" effect on nightly news. CNN staffer tells Project Veritas network played up COVID-19 death toll for ratings (nypost.com). Hospitals were incentivized with a 20% bonus for every patient with a Covid diagnosis, money deeply needed after all elective procedures were cancelled, Fact check: Medicare pays hospitals more money for COVID-19 patients (usatoday.com). Clinicians were allowed to diagnose Covid based in personal history/self-

reporting sans any type of lab testing.



Instructions for reporting Cause of Death were changed. Vital Statistics Reference Guidance Number 03, February 2023 (cdc.gov), and very best part was there was one single group that could be blamed for this rash of death and destruction sweeping across the fruited plains: The Un-Vaccinated. President Joe Biden has a message for unvaccinated Americans | CNN Politics, The unvaccinated are 'looking at a winter of severe illness and death': White House - ABC News (go.com),

(26) Matt Orfalea on Twitter: ""NOBODY IS SAFE!" #COVID19 https://t.co/GeRfWm8jce" / Twitter

CONCLUSION

The Employer encouraged the behavior. The Employer received a benefit from the encouragement of said behavior and Employees were incentivized to engage in the behavior. The vaccine did not prevent transmission and the risk was the same for vaccinated and non-vaccinated yet only non-vaccinated were forced to wear masks, forbidden to travel, banned from the gym, etc. The hardship to the Employer was nil and above all, the Executive Order had already been stayed by injunction and new instructions were given by the Office of Federal Contractors to abandon language related to vaccine mandates. These people were fired anyway. How is that not wrong?

## PROOF OF SERVICE

The undersigned, counsel for the Plaintiff-Appellant, hereby certifies that on July 5, 2023, a true and correct copy of the Appellant's Reply Brief was delivered to counsel for the Defendant-Appellee.

Dated <u>July 5, 2023</u>.

<u>/s/ Nancy Knox Bierman</u>

Nancy Knox Bierman

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**Form 8. Certificate of Compliance for Briefs**

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** ___23-15320_____

I am the attorney or self-represented party.

**This brief contains 2851 words,** including ___0_ words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[X ] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

    [ ] it is a joint brief submitted by separately represented parties.

    [ ] a party or parties are filing a single brief in response to multiple briefs.

    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** /s/Nancy Knox Bierman_____ **Date** 7/6/23 __